# UNITED STATES DISTRICT COURT

for the

District of Columbia

_____ Division

Case: 1:24−cv−03573 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 12/17/2024
Description: Employ. Discrim. (H−DECK)

Case No. _____

*(to be filled in by the Clerk's Office)*

Fabriciana De Soriano

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

Noah Bopp and Shizuha Hatori

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Jury Trial: *(check one)*  ☑ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.  The Parties to This Complaint**

**A.  The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Fabriciana De Soriano |
| Street Address | 769 Arnow Avenue #3G |
| City and County | Bronx |
| State and Zip Code | NY |
| Telephone Number | 6464831160 |
| E-mail Address | fabricianadesoriano@gmail.com |

**B.  The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

RECEIVED
DEC 17 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Page 1 of 6

Defendant No. 1

| | |
|---|---|
| Name | Noah Bopp |
| Job or Title *(if known)* | Head of School at the School for Ethics and Global Leadership |
| Street Address | 1528 18th St NW |
| City and County | District of Columbia |
| State and Zip Code | Washington DC 20036 |
| Telephone Number | 2026803264 |
| E-mail Address *(if known)* | noah.bopp@schoolforethics.org |

Defendant No. 2

| | |
|---|---|
| Name | Shizuha Hatori |
| Job or Title *(if known)* | Director at the School for Ethics and Global Leadership |
| Street Address | 1528 18th St NW |
| City and County | District of Columbia |
| State and Zip Code | Washington DC 20036 |
| Telephone Number | |
| E-mail Address *(if known)* | shizuha.hatori@schoolforethics.org |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | The School for Ethics and Global Leadership |
| Street Address | 1528 18th St NW |
| City and County | District of Columbia |
| State and Zip Code | Washington DC 20036 |
| Telephone Number | 2026847044 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
Federal Regulations 29 C.F.R § 1600.101 et seq

☑ Relevant state law *(specify, if known)*:
D.C Statute D.C. Code §§ 2-1401.01-1411.06, D.C. Regulations 4 DCMR §§ 500-599; 700-799

☐ Relevant city or county law *(specify, if known)*:

III.   **Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)
04/28/2023-07/11/2023

C.   I believe that defendant(s) *(check one)*:
- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☑ gender/sex    Workplace sexual harassment
- ☐ religion _____
- ☐ national origin _____
- ☑ age *(year of birth)*   2004   *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
  Status as a Survivor of DVSOS, PTSD

E.   The facts of my case are as follows.  Attach additional pages if needed.

Please see attached document.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.  **Exhaustion of Federal Administrative Remedies**

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

07/31/2023

B.  The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☐ issued a Notice of Right to Sue letter, which I received on *(date)* 09/19/2024 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

V.  **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## F. De Soriano - Statement of Claim

### Claim 1. BOPP suggested that the Plaintiff surrender employment due to disability

On APRIL 28, 2023, Plaintiff established Prima Facie protected rights as a person with a disability and as a victim of Domestic Violence, Sexual Offenses, and Stalking (DVSOS) during a ZOOM interview when Plaintiff proposed the creation of a new position of Graduate Intern, Teaching Assistant (TA), and Undergraduate Teaching Fellow, with the SCHOOL FOR ETHICS AND GLOBAL LEADERSHIP (SEGL). The ZOOM interview and hiring process was conducted between the Plaintiff, located in NEW YORK CITY, and BOPP, located in WASHINGTON D.C. Plaintiff, a nationally recognized scholar with the Jack Kent Cooke Foundation (JKCF) (and other reputable national scholar organizations), a graduate of the School of Ethics and Global Leadership, and SEGL Graduate Ambassador, established qualifications for the employment. Plaintiff requested the creation of said position, which was entirely new to the organization, as a proposed partnership with the Jack Kent Cooke Foundation. The Plaintiff had a hybrid position between in-person D.C. and remote NYC. On MAY 2023, Defendant BOPP (D.C) telephoned Plaintiff (NYC) and suggested she consider, in effect, surrendering her position for summer hybrid employment with BOPP in NYC/WASHINGTON D.C. due to her disability. BOPP informed Plaintiff that a student from Phillips Exeter Academy (Jane Doe, name withheld because student may be minor at time of filing) would be present during her summer employment. Defendant argued that because Plaintiff experienced a disabling DVSOS event at Phillips Exeter Academy, she may be uncomfortable, and given her disability, may in fact, experience disabling symptoms (flashbacks, hyperarousal, re-experiencing, avoidance) in Jane Doe's presence while at SEGL, D.C. BOPP violated Plaintiff's rights by suggesting that due to her disability that she in effect surrender her employment before it even began. Plaintiff experienced disability symptoms during the phone call but sought accommodations during the phone call by activating the interactive accommodations process. The Plaintiff opposed BOPP's unlawful discrimination and expressed that she would not agree to any plans to, in effect, surrender her future employment and instead continued to probe the conversation for possible accommodations. Plaintiff asked BOPP if he required Plaintiff to avoid the student (Jane Doe) during her employment and if it was acceptable to talk with the student. Defendant stated that it would not be necessary to avoid the student, and put no further conditions on the upcoming employment. Plaintiff began the hybrid employment in JUNE 2023 in NYC with accommodations that allowed her to finish high school there. She attended staff training via ZOOM from NYC.

### Claim 2: Defendant BOPP demoted Plaintiff due to disability

After BOPP suggested that Plaintiff surrender her position in JUNE 2023, upon Plaintiff's arrival at SEGL in D.C., BOPP immediately demoted Plaintiff from Graduate Intern, Teaching Assistant (TA), and Undergraduate Teaching Fellow to Executive Assistant and Teaching Assistant. The position, in effect, removed Plaintiff from a position of authority among the students, which included Jane Doe. This deprived Plaintiff of teaching experiences that would have provided her with the fundamental learning and work opportunities for which she came to D.C. Instead, BOPP opened the Fellowship position on his Instagram almost immediately after Plaintiff's arrival. To Plaintiff's belief, BOPP had not employed Undergraduate Teaching Fellows before her proposing the role. He then sought to fill the position with applicants who were not disabled. BOPP was open and notoriously known by students as "Cult Leader

Noah" for his expectation of total authority without question. Fellow staff then made numerous discriminatory statements towards Plaintiff, including excluding her from staff meetings, telling her she was never a "real" employee, and shunning her from staff interactions. Plaintiff filed a complaint about the discrimination, and BOPP replied with a wink that he expected staff to cover for each other. BOPP's response to Plaintiff's legally protected activity was enough to dissuade any reasonable person from making a future complaint. Plaintiff is entitled to relief and damages due to the actions arising from Defendant's discrimination. But not for Plaintiff disclosing her disability to request workplace accommodation, Defendant would not have suggested that Plaintiff surrender her employment. Also, but not for Defendant's decision to admit Jane Doe from Phillips Exeter Academy (where Plaintiff suffered a disabling event), Defendant would not have demoted Plaintiff.

**Claim 3. Defendant segregated Plaintiff within residential housing**

Due to SEGL being a residential school, BOPP required Plaintiff to reside in D.C. for much of her hybrid employment. BOPP segregated Plaintiff from the rest of the staff and the Faculty Quarters. BOPP offered Plaintiff no room choice and instead assigned her to a subpar study room within the Student Residences (3rd Floor) several floors apart from the Faculty Quarters (Basement/1st Floor). Plaintiff's accommodations were subpar not only in all staff housing but also in student housing, as the room contained only a chair and desk upon her arrival. Plaintiff had subpar ventilation during a severe 108-degree plus heat wave while other staff enjoyed air-conditioned quarters during her employment. Plaintiff suffered headaches, fatigue, nausea, and faintness as the building's heat rose to the attic-like study room. Plaintiff later received a subpar non-supportive futon mattress, while other faculty enjoyed actual beds. Upon the arrival of Plaintiff to D.C. on JUNE 2023, she expressed concern about the subpar condition, as did her support person, her father (Ernesto Soriano), who accompanied her during her arrival. Defendant never provided Plaintiff with on-par facilities during her employment. Especially lacking were appropriate boundaries, privacy, and downtime, as BOPP prohibited students in writing from entering the basement and 1st Floor Faculty Quarters but made no other known written prohibitions about students entering Plaintiff's space, as BOPP didn't establish similar boundaries as Plaintiff was the only staff housed directly in the Student Residences. BOPP, in effect, demoted her to a position of more of a student than a faculty employee. BOPP's segregation of Plaintiff also increased the amount of time that Plaintiff was called upon by students, given the proximity to their rooms, making it difficult, if not impossible, to have downtime to complete her high school studies as agreed upon during the hiring process. Plaintiff later experienced problems with the Jack Kent Cooke Foundation due to delays with her high school coursework due to the imbalanced demands BOPP placed on her with the segregated housing. But not for BOPP's discrimination, Plaintiff would not have been segregated and suffered loss of affiliation with the JKCF. Plaintiff is entitled to relief and damages due to the actions arising from Defendant's discrimination.

**Claim 4: BOPP and HATORI interfered with legally protected activity**

In approximately July 2023, Jane Doe, a student of Phillips Exeter Academy, arrived at SEGL, D.C., to attend the summer school session. Jane Doe immediately identified Plaintiff, inquiring if she was a former PEA student with a friend in common from PEA. Jane Doe and Plaintiff spoke privately in an open space in the residential building, where a fellow staff person walked by. Jane Doe acknowledged knowing of

Plaintiff's disability and that she had suffered a disabling event while at PEA. Jane Doe went on to state that the faculty member who was responsible for the Plaintiff's disability was still at PEA and was endangering the safety of other students. Jane Doe asked for Plaintiff's assistance in filing reports with appropriate law enforcement, as their friend in common had required medical attention for a severe incident. Jane Doe expressed that she witnessed a crime that went unreported to the authorities. Jane Doe felt safer reporting it in D.C. as opposed to on the PEA campus, in the presence of the faculty endangering students. Jane Doe explained that she had seen photographs of her friend with bruises and cuts below her waist after several violent acts during a sexual assault, which arose due to faculty neglect. As an employee working with children (Jane Doe was a minor), Plaintiff knew her duties as a mandated reporter. Plaintiff also began experiencing disabling symptoms, requiring the assistance of her support person. Coworker Jackie Araujo walked by, and Plaintiff believes that Araujo reported it to BOPP, who later fired Plaintiff days, telling her, "You cannot talk about Exeter. Therefore, you have to go." After Jane Doe requested assistance, Plaintiff telephoned her father, Ernesto Soriano, with hyperarousal, anxiety, and flashback symptoms. Plaintiff needed to report the information, as it was a legally protected activity. Given her status as a victim of DVSOS, she was within her legal rights. Together, they discussed which agencies to begin to involve, including the National Center for Missing and Exploited Children and the National Center for Human Trafficking. BOPP and HATORI began to accuse Plaintiff of "talking with students about sensitive topics" and told her that it was prohibited. Plaintiff asserted that BOPP was discriminating against her because in MAY 2023, during their call, he said it was acceptable to talk with the PEA student. BOPP and HATORI together attempted to silence both Plaintiff and Jane Doe by referencing their conversation with ambiguity and vagueness. An appropriate accommodation would have been providing a private space to converse with access to a telephone and guidance on how to make mandated reports to the desk agent at the appropriate state's Central Registry for child abuse and neglect concerns. Plaintiff is under the belief that neither BOPP nor HATORI reported the abuse to the state and, therefore, would be unable to confirm the mandated report to show that they responded lawfully. Plaintiff possesses her confirmation number to demonstrate a good-faith report of abuse. Both BOPP and HATORI cited this as the primary reason for firing Plaintiff: she was engaged in a legally protected and appropriate activity, regardless of it being a sensitive topic. Jane Doe came to Plaintiff with confidence that Plaintiff was lawful and trustworthy.

**Claim 5. BOPP took no action to respond to complaints of sexual harassment**

During employment, while on the MAIN FLOOR of the RESIDENTIAL BUILDING, BOPP came up behind Plaintiff and put his hand on her shoulder, squeezing and massaging it. HATORI also placed her hand on Plaintiff's bare thigh. A student also grazed her breast, and another student asked sexually inappropriate questions. Plaintiff met with BOPP and stated that due to her disability, she was uncomfortable with the amount of touching in the workplace, as it was worsening her disability symptoms. Plaintiff performed a legally protected action in asking BOPP for a reasonable accommodation, as there was no need for physical touch in the workplace, given her role. Plaintiff filed a complaint that students violated her right to privacy, including reaching into her purse. Defendant took no action. He referred to many of her complaints about students as 'kid stuff." The complaints included BOPP's quid pro quo harassment. BOPP was open and notoriously known by students as "Cult Leader Noah" for his expectation of total submission to his authority without question. Rather than make a reasonable accommodation in the workplace, which would have included him agreeing not to squeeze and

massage her shoulder again, to inform his staff not to touch her, and that students should stay out of her private purse, instead he made an unreasonable directive to her to "keep her distance from others." But for the existence of Plaintiff filing a verbal complaint to BOPP requesting appropriate accommodation, his dismissal and removal of Plaintiff would not have occurred. His approach of not only denying a reasonable accommodation but putting the burden on the Plaintiff would dissuade a reasonable person from making a future complaint, as the defendant not only created a burden for the Plaintiff to assume responsibility for touching her but also put a burden on her for being responsible for future unconsented touch. Distance to others had no bearing on the unwanted touch, as BOPP had entered the room from behind the Plaintiff when she could not see him approaching her and invaded her space from behind. Further, BOPP and HATORI said they were firing her for discussing sensitive topics with students and that she "cannot discuss Exeter." This topic was sexual harassment and assault, which is a legally protected activity to assert legal rights. Retaliation would not have occurred if Plaintiff had not engaged in a protected activity making complaints of repeated unwanted quid pro quo touch.

**Claim 6. Defendant made false and misleading accusations, leading to loss of educational and future work opportunities**

Both BOPP and HATORI made false, misleading, and exaggerated accusations about Plaintiff's conduct. HATORI cited that BOPP fired because she had open-toe shoes in the kitchen. Plaintiff's employment was not to work in the kitchen, and BOPP could have created a reasonable accommodation, giving her tasks outside of the kitchen. Also, BOPP was responsible for training Plaintiff properly. Plaintiff purchased closed-toe shoes shortly after being informed. HATORI's reason for firing her was invalid to cause her to lose educational and work opportunities. HATORI also accused Plaintiff of having students in her room. BOPP segregated her to a room accommodation in the student residences. Plaintiff's position allowed staff to interact with students appropriately, which Plaintiff did. BOPP accused Plaintiff of violating a student's HIPAA rights. Plaintiff had filed a complaint that students were trying to reach into her purse to access student medical documents BOPP instructed Plaintiff to carry. BOPP did not provide the Plaintiff with a lock for her purse and could not justly blame Plaintiff for student conduct. Further Plaintiff stopped students from touching forms and complained to BOPP about the students, who did not take adequate action to fix the problem. Further, the only information Plaintiff shared was a student's birthday, which school staff can share. BOPP and HATORI also accused Plaintiff of talking about sensitive topics with students. Plaintiff was within her legal right to discuss her disability, the disabling event, even if it meant revealing neglect at another institution. Also, as a mandated reporter, Plaintiff was performing a legally protected activity of receiving a report of abuse or neglect from a student, even if the abuse occurred at home, a church, a sports field, or another institution. But not for Plaintiff participating in legally protected activities, including making complaints of quid pro quo harassment.

**Claim 7: BOPP failed to provide Plaintiff with agreed accommodations.**

Plaintiff came to D.C. in June 2023, agreeing that BOPP would allow her adequate downtime to complete her high school studies. He denied her sufficient time to complete her high school diploma per the JKCF requirements, causing her to lose her undergraduate college scholarship, including eligibility for a graduate scholarship. They agreed to 32 hours a week for 10 weeks, but BOPP immediately began expecting her to be fully available to work even 15 hours a day for 10 days without weekend breaks.

Plaintiff repeatedly asked BOPP for a written schedule and timekeeping system, which he said he would provide but never did. Instead, he told her she had to find time to do her studies independently. However, BOPP never made it clear when she had a day off. BOPP never provided the necessary accommodations, causing lasting harm.

**Claim 8. BOPP and HATORI retaliated and refused to engage further in the interactive accommodation process**

During an in-person meeting on JULY 11, 2023, between BOPP, HATORI, and Plaintiff in THE RESIDENCE BUILDING, Plaintiff stated that both were discriminating against her for seeking disability accommodations, protections for sexual harassment, quid pro quo harassment, and for engaging her external support person in receiving information about abuse. BOPP and HATORI also accused Plaintiff of misusing her phone at meetings, but instead, Plaintiff was involved in reasonable accommodations of texting her support person during stressful times. BOPP and HATORI knowingly took the need for accommodations out of context. BOPP and HATORI blamed Plaintiff for student behavior, including a student trying to get papers from her purse and Jane Doe seeking to report abuse. Plaintiff explained that she had performed her duties as hired, and was performing legally protected activities, and sought to continue her employment. Plaintiff asserted that the successful completion of her 10-week employment with exit paperwork was necessary for her College Scholarship. BOPP laughed and said, "No, no, no, no, no," causing Plaintiff to cry as he intentionally inflicted emotional distress. Plaintiff instructed her to deal with HATORI as a substitute (unqualified) emotional support person and told her to get her luggage and get out. In effect, he put her on the street in an unfamiliar urban area without a support person, endangering a disabled person in emotional distress as an act of retaliation against a disabled person who had engaged in legally protected activities.

**Claim 9. Defendant refused to engage Plaintiff's support person during an emergency**
Plaintiff was accompanied from NYC to Washington D.C. by a disability support person, father, Ernesto Soriano. Plaintiff introduced BOPP to her support person. Plaintiff made a disability accommodation request that Defendant communicate with Plaintiff's support person as needed. Defendant agreed to take the Plaintiff's support person's telephone number. Soriano expressed that this was Plaintiff's first job and wanted to help ensure that the accommodations were adhered to. Plaintiff later telephoned Defendant to ensure Plaintiff understood her break schedule. Defendant did not return the call. During the discharge, neither BOPP nor HATORI made attempts to ensure that Plaintiff had the appropriate disability accommodations in place. Defendant threw Plaintiff out onto the street with her luggage alone, in danger, intentionally inflicting emotional distress in an act of retaliation for participating in a legally protected activity. BOPP made no attempts to coordinate with the support person, who was unavailable and hours away and was supporting another person in a critical care unit. Soriano called BOPP 10 times, and BOPP refused to engage in the interactive accommodation process. He assigned HATORI to take orders as an unqualified substitute who could not adequately provide support. Soriano said you cannot throw a disabled person on the street in an unfamiliar area with her luggage, and HATORI responded, "I am here to take orders. She has to be out by 4 PM before the students come." BOPP was open and notoriously known by students as "Cult Leader Noah" for his expectation of submission to total authority without question. HATORI, in a telephone after the firing on JULY 11, 2023 call, stated to Soriano that she didn't understand the scope of what was happening (sexual harassment, retaliation, etc.). But not for Plaintiff

disclosing her disability, Defendant would not have caused her physical and emotional damages, loss of employment, and related loss of education damages due to his unwillingness to engage in the interactive accommodation process.

**F. De Soriano - Statement of Relief**

1) Reimbursement of scholarship costs in the amount of $660,000. As a direct result of SEGL's actions and wrongful termination, Plaintiff lost her relationship and standing with the Jack Kent Cooke Program, which agreed to provide her with annual scholarships in the amount of $55,000 for all higher education expenses.
2) Compensatory damages in the amount of $100,000.
3) Attorney's Fees and Costs in the amount of $14,000.
4) Reimbursement of out-of-pocket expenses because of sudden termination in the amount of $1,500. Plaintiff had to pay for travel and lodging when terminated and kicked out of the residential housing.
5) Require SEGL to send a letter to Jack Kent Cooke Program to retract misleading statements made about Plaintiff; list accomplishments during her internship; request Plaintiff to be readmitted to the College Scholarship Program with full restoration of applicable benefits and services, including advisor and peer support.
6) Reinstatement to internship position in good standing; support Person (father) on site; pay for all onsite expenses (train, meals, hotel, etc.) for both Plaintiff and father; provide a letter of recommendation
7) Reinstatement of ambassador position.
8) Eliminate hostile work environment from Noah Bopp by investigating his conduct and considering a leave of absence/disciplinary action.
9) Require SEGL to report Jane Doe witness statement to DCYF, NH Police, National Center of Missing and Exploited Children.

Please see attached document.

VI. **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/17/2024

Signature of Plaintiff: [signature]
Printed Name of Plaintiff: Fabriciana De Soriano

B. **For Attorneys**

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address