**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FABRICIANA DE SORIANO,

     Plaintiff,

v.

NOAH BOPP, SHIZUHA HATORI, THE
SCHOOL OF ETHICS AND GLOBAL
LEADERSHIP, and JACK KENT COOK
FOUNDATION,

     Defendants.

Case No.  1:24-CV-03573-CJN

## MEMORANDUM IN SUPPORT OF SCHOOL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Dated: January 16, 2026

**POTOMAC LAW GROUP, PLLC**
Susan Sajadi, DC Bar No. 1006572
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, D.C., 20006
Telephone: (917) 238-0990
Fax: (202) 318-7707
ssajadi@potomaclaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.     INTRODUCTION ................................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

III.   STANDARD OF REVIEW ............................................................................................ 2

IV.    ARGUMENT ...................................................................................................................... 4

     A.   The FAC is Confused, Ambiguous and Unintelligible Such That It Fails to Put School Defendants on Notice of Any Colorable Claim. ....................................... 4

     B.   Plaintiff Fails to State a Sex-Based Claim Under Title VII. ....................................... 5

          1.   The Complaint does not state a prima facie case of hostile work environment. ......................................................................................................... 5

          2.   The Complaint does not state a prima facie case of quid pro quo sexual harassment. ......................................................................................................... 6

     C.   Each of Plaintiff's DCHRA Claims Fails to State a Plausible Claim. ....................... 7

          1.   Counts IV–VI (sex discrimination/harassment, hostile work environment, retaliation) are impermissibly conclusory and do not plausibly plead employer liability or materially adverse action because of sex. ....................................................................................................... 7

          2.   Count VII (DCHRA disparate treatment based on "status as a victim of sexual assault") fails to state a plausible claim. ..................................................... 8

          3.   Count VIII (DCHRA disability -- failure to accommodate) fails because the pleaded "accommodations" are not actionable failures to provide reasonable accommodations to enable job performance. ................................... 10

          4.   Count IX (DCHRA disability retaliation) fails because the FAC does not plausibly allege that Plaintiff suffered an adverse action because she requested a reasonable accommodation. ........................................................... 12

     D.   Each of Plaintiff's Common Law Claims Against School Defendants Fails to State a Plausible Claim. ............................................................................................... 12

          1.   Plaintiff's Claim of Interference with Business Relationship Fails (Count X). .............................................................................................................. 12

          2.   Plaintiff's Claim of Defamation/False Light Fails (Count XI). ......................... 13

          3.   Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails (Count XII). ....................................................................................................... 14

          4.   Plaintiff's Claim of Negligent Supervision Fails (Count XIII). ........................ 15

          5.   Plaintiff's Claim for Breach of Contract Against SEGL Fails (Count XV). ....................................................................................................................... 16

i

6.    Plaintiff's Claim of Wrongful Termination Against Public Policy Fails
(Count XVII). .............................................................................................................. 16
V.    CONCLUSION.................................................................................................................... 17

**TABLE OF AUTHORITIES**

*Adams v. Cochran & Co.,* 597 A. 2d 28 (D.C. 1991) ......................................................................... 16, 17

*Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83 (D.D.C. 2007) .................................................... 6

*Artis v. Bernanke*, 630 F.3d 1031 (D.C. Cir. 2011) ............................................................................. 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 2, 3, 4

*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009) .................................................. 3

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) .............................................. 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................ 2, 3

*Brown v. Califano*, 75 F.R.D. 497 (D.D.C. 1977) ............................................................................ 2, 4

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ....................................................................... 2, 3

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ................................................................... 6, 7

*Cain v. Reinoso*, 43 A.3d 302 (D.C. 2012) ...................................................................................... 5

*Carter v. Greenspan*, 304 F.Supp.2d 13 (D.D.C. 2004) ..................................................................... 6

*Davis v. Coastal International Security, Inc.*, 275 F.3d 1119 (D.C. Cir. 2002) ................................... 5

*Dickerson v. SecTek, Inc.*, 238 F.Supp.2d 66 (D.D.C. Nov. 2002) ...................................................... 9

*Faragher v. Boca Raton*, 524 U.S. 775 (1998) .................................................................................. 6

*Floyd v. Lee*, 968 F. Supp. 2d 308 (D.D.C. 2013) ........................................................................... 10

*Forkkio v. Powell,* 306 F.3d 1127 (D.C. Cir. 2002) .......................................................................... 9

*Gary v. Long*, 59 F.3d 1391 (D.C. Cir. 1995) .................................................................................. 5

*Hamrick v. United States*, 775 F. Supp. 2d 140 (D.D.C. 2011) ......................................................... 4

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ........................................................................ 6

*Hinson ex rel. N.H. v. Merritt Educ. Center*, 521 F. Supp. 2d 22 (D.D.C. 2007) ............................... 3

*Holcomb v. Powell*, 369 U.S. App. D.C. 122, 433 F.3d 889 (D.C. Cir. 2006) .................................... 5

*Homan v. Goyal*, 711 A. 2d 812 (D.C. 1998) ................................................................................. 14

*Larijani v. Georgetown Univ.,* 791 A.2d 41 (D.C. 2002) ................................................................ 15

*Maramark v. Spellings*, No. 01-2206, 2006 WL 276979 (D.D.C. Feb. 3, 2006) ............................... 9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................... 5

*McKeithan v. Boarman*, 803 F.Supp.2d 63 (D.D.C. 2011) ................................................................ 1

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................................................... 7

*Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023 (D.C. 2015) ....................................................... 13

*Norden v. Samper*, 503 F.Supp.2d 130 (D.D.C. 2007) .................................................................... 10

*Papasan v. Allain*, 478 U.S. 265 (1986) ......................................................................................... 3

*Phelan v. City of Mt. Rainier*, 805 A.2d 930 (D.C. 2002) .............................................................. 15

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ........................................................................4

*Savignac v. Jones Day*, 486 F. Supp. 3d 14 (D.D.C. 2020) ........................................................9

*T.M. v. D.C.*, 961 F. Supp. 2d 169 (D.D.C. 2013) ......................................................................2

*Thomas v. District of Columbia*, No. 22-1269, 2023 WL 2610512 (D.D.C. Mar. 23, 2023) ............ 11

*Tsintolas Reality Co. v. Mendez,* 984 A. 2d 181 (D.C. 2009) ....................................................16

*Waldon v. Covington*, 415 A.2d 1070 (D.C. 1980) ....................................................................14

*Wallach v. City of Pagedale, Missouri*, 359 F.2d 57 (8th Cir. 1966) .........................................4

*Whitehead v. Clinton*, No. 99-2891, 1999 WL 33326727 (D.D.C. 1999) ..................................4

**RULES & STATUTES**

Fed. R. Civ. P. § 12(b)(6) ..............................................................................................*passim*

42 U.S.C. § 2000e–5(f)(1) ....................................................................................................... 1

D.C. Code § 4-1321.02 ......................................................................................................... 17

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652D ................................................................................. 14

## I.    INTRODUCTION

The School for Ethics and Global Leadership ("SEGL," the "School"), Noah Bopp ("Bopp"), and Shizuha Hatori ("Hatori"), (collectively the "School Defendants") by and through their undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.[1] As shown below, Plaintiff's claims are difficult to discern and do not adequately put the School Defendants on notice of the claims against them. To the extent Plaintiff's claims are comprehensible, they fail to state a claim upon which relief may be granted as a matter of law. For these reasons, as well as those stated in more detail below, the instant lawsuit calls for dismissal with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Fabriciana De Soriano worked with Defendants Bopp and Hatori at The School for Ethics and Global Leadership ("the School") for just 18 days in the summer of 2023. *See* First Amended Complaint ("FAC") ¶¶ 80, 129. The School employed all three – Plaintiff as an intern, Bopp as Head of School, and Hatori as a managerial employee. The FAC does not allege that Hatori or Bopp employed the Plaintiff, nor could it. And Plaintiff has filed no charge against Bopp or Hatori with the Equal Employment Opportunity Commission ("EEOC").[2] Beyond these basic facts, the narrative in the First Amended Complaint is difficult to follow. Rather than attempting to summarize the convoluted FAC here, this Memorandum

---

[1] Defendant Jack Kent Cooke Foundation is not represented by undersigned counsel.

[2] Exhaustion of administrative remedies by filing a charge of discrimination with the EEOC is required before a plaintiff may bring a civil suit under Title VII. *McKeithan v. Boarman*, 803 F.Supp.2d 63, n. 3 (D.D.C. 2011); see also 42 U.S.C. § 2000e–5(f)(1). "The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011).

is organized by legal claim. For each claim, the Memorandum gleans those facts that could conceivably support it.

Plaintiff filed charges against her employer, The School for Ethics and Global Leadership, with both the EEOC and the District of Columbia Office of Human Rights ("DCOHR"), on August 4, 2023 and July 10, 2024, respectively.[3] FAC, Exhs. 1-2.  Plaintiff received a right-to-sue letter from the EEOC on September 19, 2024 [FAC, Exh. 3] but chose not to file suit against her employer, instead naming only Bopp and Hatori as defendants. The 90-day window in which Plaintiff could have filed suit against the employer is now closed. Plaintiff only dismissed her charge before the DCOHR when School Defendants filed their first motion to dismiss, pointing out that she was barred from proceeding in both fora on the same claims simultaneously.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The rule is intended to "give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer[;] . . . sharpen the issues to be litigated[;] and to confine discovery and the presentation of evidence at trial within reasonable bounds." *T.M. v. D.C.*, 961 F. Supp. 2d 169, 173-74 (D.D.C. 2013) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action based upon the plaintiff's "failure to state a claim upon which relief can be granted." In essence, a

---

[3] It may be that the July 10, 2024 charge before the D.C. Office of Human Rights is in fact an amended charge, given that the August 4, 2023 EEOC should have been cross-filed.

motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds for entitlement to relief, a plaintiff must tender "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must contain sufficient factual matter, which if accepted as true, states a claim to relief that is plausible on its face. *Id.* at 570.[4] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In considering a 12(b)(6) motion to dismiss, a court must accept as true all of the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant the plaintiff "all reasonable factual inferences drawn from well-pleaded factual allegations." *Hinson ex rel. N.H. v. Merritt Educ. Center*, 521 F. Supp. 2d 22, 27 (D.D.C. 2007). However, a court need not accept inferences drawn by plaintiff if they are unsupported by the facts in the complaint, nor must the court accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. For the same reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[4] The Plaintiff's story is a fabrication. The key events she describes never occurred. Plaintiff's own motion papers reveal an experienced litigant who, over the course of years, has brought conflicting, implausible, and potentially ruinous allegations against multiple schools, educators, and classmates. Even within this action, Plaintiff has alleged facts, each version different from the last, in three state and federal fora. By contrast, Noah Bopp and Shizuha Hatori are accomplished educators of integrity who, outside of this relentless attack, are relative strangers to the legal process. The handful of times they interacted with Plaintiff before she was terminated, their conduct was professional and appropriate. However, in keeping with the standard of Rule 12, however, this Memorandum accepts the facts in the FAC as true.

3

conclusory statements, do not suffice." *Id.*; *see also Iqbal*, 556 U.S. at 678 ("an unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss).

## IV.    ARGUMENT

### A.    The FAC is Confused, Ambiguous and Unintelligible Such That It Fails to Put School Defendants on Notice of Any Colorable Claim.

Courts have unhesitatingly dismissed complaints, like Plaintiff's, that: are "vague and, in some respects, unintelligible" *Wallach v. City of Pagedale, Missouri*, 359 F.2d 57, 58 (8th Cir. 1966); present "a confused and rambling narrative of charges and conclusions," *Brown v. Califano,* 75 F.R.D. 497, 499 (D.D.C. 1997); or are "so confused, ambiguous, vague or otherwise unintelligible that [their] true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Hamrick v. United States*, 775 F. Supp. 2d 140, 142 (D.D.C. 2011).

By presenting an accumulation of disjointed information and baseless allegations, "plaintiff has rendered it impossible to comprehend the factual basis of [her] claim." S*ee Whitehead v. Clinton*, No. 99-2891, 1999 WL 33326727 (D.D.C. 1999). Under such circumstances, a court is obligated to dismiss the complaint for failing to comply with Rule 8(a) and failure to state a claim under Rule 12(b)(6).

Although Plaintiff has now retained counsel and amended her filing, the FAC is no less convoluted than the original Complaint. Plaintiff's FAC requires dismissal for failure to state a claim upon which relief may be granted as it is nothing more than a "rambling narrative of charges and conclusions" and "its true substance, if any, is well disguised[.]" *Brown,* 75 F.R.D at 499 (D.D.C. 1997); *Salahuddin*, 861 F.2d at 42 (2d Cir. 1988). For these reasons, and because Defendants did not employ Plaintiff, the claim should be dismissed with prejudice as to School Defendants.

**B.        Plaintiff Fails to State a Sex-Based Claim Under Title VII.**

Title VII discrimination claims are analyzed using the approach laid out in *McDonnell Douglas Corp. See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012). The *McDonnell Douglas* standard requires that the employee must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Holcomb v. Powell*, 369 U.S. App. D.C. 122, 433 F.3d 889, 901 (D.C. Cir. 2006). Plaintiff has not established a prima facie case under Title VII under any of the discernable theories in the Complaint.

The Title VII claims against the individual defendants, Hatori and Bopp, should be dismissed because Title VII does not impose individual or supervisory liability. *Gary v. Long*, 59 F.3d 1391, 1400 (D.C. Cir. 1995). Title VII authorizes suits only against an "employer," not individual employees, supervisors, or managers. Because Hatori and Bopp did not employ Plaintiff and were not named as respondent-employers in the EEOC charge, they are not proper Title VII defendants. Independently, any Title VII claim against them fails for lack of administrative exhaustion, as Plaintiff did not file an EEOC charge against them. Accordingly, the Title VII claims against Hatori and Bopp must be dismissed with prejudice.

**1.        The Complaint does not state a prima facie case of hostile work environment.**

To make out a prima facie case for a Title VII gender-based hostile-work-environment claim, Plaintiff must be subjected to unwelcome sexual harassment based on her sex. Even if her Complaint could establish those preliminary factors, which it cannot, she has not shown that the alleged harassment had the effect of creating an intimidating, hostile, or offensive working environment. *See Davis v. Coastal International Security, Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002).

The allegations made by Plaintiff fail as a matter of law. As held by the Supreme Court, the standard for determining a legally actionable hostile work environment claim under Title VII must be analyzed using a reasonable person standard considering both the objective and subjective circumstances. *See Faragher v. Boca Raton*, 524 U.S. 775, 787 (1998). There must be analysis of the totality of the circumstances, including the frequency and severity of the offensive conduct. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Importantly, the hostile work environment must be severe and pervasive. *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 98 (D.D.C. 2007). Multiple isolated incidents of attempting to hug or kiss a colleague does not create a hostile work environment. *Id*. at 97-98; *Carter v. Greenspan*, 304 F.Supp.2d 13, 25 (D.D.C. 2004) (concluding that an employee's allegations that the employer "'caressed [him] on his knee,' 'placed her breast on [his] arm,' and 'placed his fingers on her buttocks'" were not "sufficiently severe in quantity or quality" to create a hostile work environment) (alteration in original).

Here, the Complaint alleges a single occasion on which the Plaintiff was touched on the shoulder by Defendant Bopp and a separate, single occasion on which she was touched on the leg by Defendant Hatori. FAC ¶¶ 97-98, 107-110. Even if these fabricated incidents did occur, were unwelcome, and were based on Plaintiff's sex, they are not objectively severe and pervasive enough to create a work environment that a reasonable person would find hostile or abusive. *See Carter v. Greenspan*, 304 F.Supp.2d 13, 25 (D.D.C. 2004).

> ### 2.     The Complaint does not state a prima facie case of quid pro quo sexual harassment.

Plaintiff does not allege the exchange that is at the core of "this for that" harassment. She alleges neither that she was subjected to requests for sexual favors, nor were tangible job benefits dependent on how she responded to those requests. *See Burlington Indus., Inc. v.*

*Ellerth*, 524 U.S. 742 (1998). Plaintiff separately alleges that job benefits were impacted for a discriminatory reason, but not based on her sex or her failure to respond to sexual advances. FAC ¶ 203. She draws no quid pro quo connection between the alleged incidental touches and tangible job benefits. *Id.*

 **C.**  **Each of Plaintiff's DCHRA Claims Fails to State a Plausible Claim.**

   **1.**  **Counts IV–VI (sex discrimination/harassment, hostile work environment, retaliation) are impermissibly conclusory and do not plausibly plead employer liability or materially adverse action because of sex.**

Plaintiff's sexual harassment, hostile work environment and retaliation claims are underpinned by her desire to hold the School liable for alleged student conduct. Indeed, Plaintiff relies on alleged student conduct in large part for Counts IV-VI. The FAC alleges that Plaintiff reported the two students whose behavior she found offensive, but it does not allege any specific remedial step that would have been reasonable and available under the circumstances that the School failed to take, nor any subsequent recurrence after notice that would render the School's response deliberately indifferent. The generalized assertions that "neither person took any appropriate remedial action" (FAC ¶¶ 210, 224) and "SEGL failed to take any steps" (FAC ¶ 103) are conclusory and lack supporting factual detail (who was told what, when, what reasonable steps were requested, what the School did or did not do afterward, and whether the complained-of conduct continued).

Furthermore, Plaintiff's hostile work environment claim similarly fails. The law is clear that the very nature of such an environment requires a "repeated nature" that "cannot be said to occur on a particular day. It occurs over a series of days or perhaps years, and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Plaintiff alleges that two of her

supervisors, Bopp and Hatori, touched her inappropriately, but these conclusory allegations –

based on two isolated incidents—fail to establish a hostile work environment. The FAC alleges

a single instance in which Bopp touched her arms and shoulders (FAC ¶ 108) and a single

instance in which Hatori touched her leg (FAC ¶ 172) during a meeting (allegedly in front of

"all the students and the faculty" yet it is "unclear if anyone else noticed" (FAC ¶¶ 97-98)).

While those allegations are taken as true for purposes of Rule 12(b)(6), they are presented as

isolated acts and are not alleged to have been accompanied by sex-based comments or threats,

or to have recurred after complaint -- facts that, as pleaded, fall short of a plausibly "severe or

pervasive" hostile work environment. Bare assertions that Plaintiff experienced "near daily"

hostility (FAC ¶ 231) are also unsupported by factual particulars beyond the same discrete

allegations.

Finally, with respect to Count VI, the FAC alleges a termination "less than two weeks

after" protected complaints but again ties the termination meeting to the School's concerns that

Plaintiff was engaging with a student about an alleged incident at Exeter and alleged

privacy/records issues. FAC ¶¶ 118-144. The retaliation counts are conclusory because they

do not plead nonconclusory facts supporting that "but-for" the protected activity, Plaintiff

would not have been terminated; rather, the FAC itself advances alternative, non-retaliatory

reasons proffered by the School for the decision, undercutting the plausibility of causation as

pleaded. Counts IV through VI should be dismissed.

**2.      Count VII (DCHRA disparate treatment based on "status as a victim of sexual assault") fails to state a plausible claim.**

Count VII falsely alleges the School prohibited Plaintiff from discussing sexual assault

with students and then terminated her "in substantial part because of her status as a victim of

sexual assault." FAC ¶ 258. But the factual allegations show, at most, (i) the School's reaction

to Plaintiff's interactions with a current student about a third party's sexual-assault allegations at another school (FAC ¶ 253), and (ii) the School's claim that staff should not discuss such matters with students (FAC ¶ 255) -- positions that are, on their face, content-based program management decisions rather than decisions motivated by animus toward Plaintiff's alleged "victim-of-sexual-assault" status.

D.C. law is clear that in order to prevail on a statutory DCHRA claim, the plaintiff must demonstrate that her employer took adverse action *because* of her membership in a statutorily protected group. *See, e.g., Dickerson v. SecTek, Inc*., 238 F.Supp.2d 66 (D.D,C. Nov. 2002), citing *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (emphasis added). Further, as DCHRA disparate treatment claims are evaluated as Title VII claims, the Plaintiff must also establish that "she was treated differently from similarly-situated employees outside the protected class." *Maramark v. Spellings*, No. 01-2206, 2006 WL 276979, at \*14 (D.D.C. Feb. 3, 2006) *aff'd*, No. 06-5099, 2007 WL 2935411 (D.C. Cir. Sept. 20, 2007). *See also Savignac v. Jones Day*, 486 F. Supp. 3d 14, 28 (D.D.C. 2020).

The FAC falsely alleges Bopp said, "We cannot be having conversations about Exeter" and "we can't be discussing things like that," tethering the admonition to content and institutional relationships, not Plaintiff's status. FAC ¶ 130. The FAC does not allege any comparator employees were permitted such conversations when they, too, allegedly had a "victim-of-sexual-assault" status different from Plaintiff's, nor any statements reflecting hostility toward Plaintiff's status.

Plaintiff's conclusory assertion that "Plaintiff alone was prohibited from speaking about sexual assault" (FAC ¶ 257) is unsupported by facts identifying comparators, timing, or circumstances that would allow an inference of differential treatment because of her alleged

9

protected status rather than because of the student-safety and program-content concerns identified in the complaint itself. Conclusory allegations that the termination was "substantially motivated" by Plaintiff's status are likewise insufficient without nonconclusory facts supporting that inference. The FAC ties the alleged termination decision to the timing of the student conversation and to the School's desire to avoid discussions about what may have occurred at Exeter regarding another student, not to Plaintiff's status as a victim. That articulation defeats the required "because of" element for disparate treatment under the DCHRA as pleaded. Count VII therefore should be dismissed.

### 3.    Count VIII (DCHRA disability -- failure to accommodate) fails because the pleaded "accommodations" are not actionable failures to provide reasonable accommodations to enable job performance.

Plaintiff pleads two purported "accommodations": (1) that no one touch her, and (2) that the School includes her father in any job-related communications or meetings. As pleaded, neither "accommodation" amounts to a request for a workplace modification to enable the performance of essential job functions.

D.C. law makes clear "[a]accommodations are reasonable if they allow the employee to perform the essential functions of the job *without imposing undue hardship* on the employer." *Norden v. Samper*, 503 F.Supp.2d 130, 145 (D.D.C. 2007) (emphasis added). Further, Plaintiff must establish that "a reasonable accommodation would have allowed her to perform the essential functions of her job." *Floyd v. Lee*, 968 F. Supp. 2d 308, 328 (D.D.C. 2013). And yet, based on Plaintiff's alleged requests – which in reality were never made, so could not have been denied – it is entirely unclear how these requests are reasonable or linked to her job functions. Indeed, the FAC alleges two isolated instances of touching by supervisory staff, not that Plaintiff's job required touching, or that the School required touching as a condition of employment. Notably, however, Plaintiff also alleged touching on the part of

10

students, which, in a close school environment, is inevitable. Thus, taking Plaintiff's pleading as true that she requested that no one touch her, it is not an accommodation that the School would have been able to make. Regardless, this is not a workplace "accommodation" linked to job performance but rather a generalized preference regarding interpersonal conduct. The FAC itself ties those isolated instances to alleged harassment theories, not to a denied workplace modification.

Furthermore, the FAC pleads that the School did not include Plaintiff's father in meetings on June 29 and July 11, 2023. FAC ¶ 273. Specifically, Plaintiff claims that she required her father to be "included in any communications about her job or performance, as he was able to help her manage any anxiety." FAC ¶ 74. But it does not plead that involving a non-employee third party in all job communications (presumably including those with students at the School) is a reasonable accommodation under the DCHRA, that the School was obligated to breach confidentiality or management prerogatives to include a non-employee in disciplinary or performance meetings (without any of the requisite vetting or background checks necessary to have an adult around minors), or that any viable alternative was proposed and refused. Furthermore, Plaintiff fails to plead whether she could perform her job duties (which she claims changed inexplicably at FAC ¶ 115) with accommodation (or without). As pleaded, this demand is facially unrelated to enabling Plaintiff to perform essential duties and is unreasonable, both practically and as a matter of law. *See Thomas v. District of Columbia*, No. 22-1269, 2023 WL 2610512 (D.D.C. Mar. 23, 2023) (granting motion to dismiss because plaintiff did not plead failure to accommodate claim when plaintiff failed to "show more than that her employer failed to engage in the interactive process. She must demonstrate that a reasonable accommodation was possible.") (internal citation omitted).

11

Finally, the FAC lacks nonconclusory allegations that the School failed to engage in any interactive process toward a reasonable, job-related accommodation, or that a feasible, reasonable accommodation existed and was refused. *See id*. The conclusory assertion that "there was no business justification" is insufficient. FAC ¶ 274. Accordingly, Count VIII should be dismissed.

        **4.**        **Count IX (DCHRA disability retaliation) fails because the FAC does not plausibly allege that Plaintiff suffered an adverse action because she requested a reasonable accommodation.**

Count IX is premised on the same accommodation requests discussed above. The FAC does not plausibly allege that "but for" those requests, Plaintiff would not have been terminated. Instead, the FAC attributes the termination, which is based on Plaintiff's own narrative, to the School's concerns about Plaintiff's interactions with a student regarding what she alleges occurred at Exeter and alleged privacy issues. The bare assertion that termination occurred "shortly after" her complaints is insufficient where the complaint's own factual matter asserts intervening, non-retaliatory reasons and no facts linking the decision-makers' motive to the accommodation request. For this reason, Count IX against the School and Bopp should also be dismissed.

    **D.**    **Each of Plaintiff's Common Law Claims Against School Defendants Fails to State a Plausible Claim.**

        **1.**        **Plaintiff's Claim of Interference with Business Relationship Fails (Count X).**

Plaintiff alleges that the Foundation provided her a $4,000 stipend for a summer internship hosted by the School. FAC ¶¶ 62, 70. Given that structure, the allegation that Bopp notified the Foundation that she engaged in misconduct and was terminated, FAC ¶¶ 140, 146, is unsurprising. It is exactly the type of professional communication one would expect under the circumstances. Plaintiff's tortious-interference theory fails because the School is not a

stranger to her business relationship with the Foundation, it is an essential participant. Under D.C. law, tortious interference requires improper interference in a business relationship by an outside third party. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1134 (D.C. Cir. 2015) (applying D.C. law); *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1037 (D.C. 2015). Notifying the Foundation of Plaintiff's termination would be a necessary and privileged communication by the School. Plaintiff's own allegations show that her Foundation funding was dependent on her continued internship at the School. FAC ¶¶ 62, 70. This claim merely repackages her termination theory and recasts the School's expected, professional communications as "interference." Nor does naming Bopp change the analysis: he is alleged to have communicated with the Foundation in his capacity as Head of School, not as an interfering outsider. Speculation about Bopp's intent does not transform this business communication into tortious conduct. Plaintiff fails to plausibly plead tortious interference against either the School or Bopp; this Count should be dismissed.

### 2.    Plaintiff's Claim of Defamation/False Light Fails (Count XI).

Plaintiff's combined defamation/false light claims fail as a matter of law because they are based solely on an alleged communication to the Foundation concerning the status of Plaintiff's School-hosted internship. FAC ¶¶ 140, 300.To succeed on a defamation claim, Plaintiff must plausibly allege that the School published a false statement of fact about her to a third party, and did so negligently. Restatement (Second) of Torts § 558. Here there has been no publication, falsity, or negligence. The business relationship Plaintiff purports to protect here is between herself and the Foundation. Disclosure of information to the Foundation cannot be publication – it is provided to a party to the relationship. *Id.* To the extent Plaintiff challenges the School's alleged view that she engaged in misconduct, that disagreement does not render the School's findings false, only disputed, or at most, the opinion of the School,

13

neither of which can give rise to a claim of defamation, which requires a false statement. *Id.* Finally, the School reached these conclusions internally – that she engaged in misconduct and was to be terminated – so it cannot be said the School failed to act with reasonable care in ascertaining the truth of its statements, *i.e.*, recklessly or negligently. *Id.*

A claim of false light is even further out of reach for Plaintiff because it requires that the School engaged in publicity. *See* Restatement (Second) of Torts, § 652E. Publicity, in this context, means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D. Plaintiff makes no assertion that School Defendants engaged in publicity regarding her employment or termination, nor could she as nothing of the kind occurred. The combined claim of defamation/false light should be dismissed with prejudice as to both the School and Bopp, who was acting on the School's behalf. This Count should be dismissed as to both the School and Bopp.

### 3. Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails (Count XII).

Under District of Columbia law, a claim for intentional infliction of emotional distress ("IIED") requires a plausible allegation of "extreme and outrageous conduct intentionally or recklessly (causing) severe emotional distress to another." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980), *citing* Restatement (Second) of Torts Sec. 46. Even if her false allegations were true, the FAC still fails to state an IIED claim. The alleged incidents do not rise to the level of "extreme and outrageous" conduct that is required under D.C. law. To constitute IIED, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A. 2d 812, 818 (D.C. 1998) (*citing,*

14

*inter alia,* Restatement (Second) of Torts); *see also Larijani v. Georgetown Univ.,* 791 A.2d 41, 44 (D.C. 2002). Plaintiff has not come close to meeting – nor even attempted to meet – this strict standard. Again, she has simply repackaged her other claims to create a duplicative tort theory. The claim of IIED against Bopp and Hatori should be dismissed with prejudice.

### 4.      Plaintiff's Claim of Negligent Supervision Fails (Count XIII).

To establish a claim of negligent supervision, Plaintiff must plausibly allege that Defendants had actual or constructive notice, before an alleged incident, of a foreseeable risk of harm and then failed to exercise reasonable supervision to prevent it. *Phelan v. City of Mt. Rainier*, 805 A.2d 930, 937-38 (D.C. 2002). Plaintiff falsely alleges that she was touched on the leg by Hatori on June 25 or June 26, 2023 and on the arms by Bopp on June 27, 2023. FAC ¶¶ 97, 108-109. Even if either incident occurred or could be construed as inappropriate, the Complaint pleads no facts to show that the School had actual or constructive notice before the alleged incidents that either Hatori or Bopp had a propensity to engage in inappropriate physical conduct.

The fact that Bopp is the Head of School does not supply the missing element of prior notice of risk; the tort turns on what the employer knew before the alleged misconduct, not on the occurrence of the incident itself. Pivoting to individual defendants does Plaintiff no favors. Bopp cannot be said to have negligently supervised himself, and Plaintiff alleges no actual or constructive knowledge Bopp had of any risk posed by Hatori. Plaintiff's negligent supervision count adds no independent factual allegations beyond the underlying tort claims and is therefore duplicative.

Plaintiff further alleges that on June 27, 2023, she informed Bopp and Hatori of concerns she had regarding two students. FAC ¶ 101. According to the FAC, one student had touched her inappropriately and another had asked inappropriate questions of her. FAC ¶ 102.

15

Even treating as true that these events occurred and were shared with Bopp and Hatori, Plaintiff alleges no prior notice to the School that such incidents were a foreseeable risk, nor any way in which the School failed to exercise reasonable corrective action. Repackaging allegations under various theories of liability does not strengthen any one claim. The claim of negligent supervision fails for lack of prior notice and should be dismissed as to the three School Defendants.

> **5.    Plaintiff's Claim for Breach of Contract Against SEGL Fails (Count XV).**

Plaintiff's claim for breach of contract against the School is an empty vessel: it identifies no contract with the School, no contractual obligation, and no actionable breach. Plaintiff must plead a plausible breach of contract claim, including a valid contract between Plaintiff and the School. *See Tsintolas Reality Co. v. Mendez,* 984 A. 2d 181, 189 (D.C. 2009). Instead, she makes only the bare assertion that she entered a contract with the School on April 6, 2023 and the School breached the contract on July 11, 2023 – and nothing more. FAC 332-333. She points to Exhibit 10 as the contract itself, but that document is a unilateral offer made by the Foundation to Plaintiff, not a mutual agreement between Plaintiff and the School. FAC, Exh. 10. She then invites the Court to sift through the entirety of the Opposition brief to find evidence for the claim "herein." FAC 331. Plaintiff has not plausibly alleged the elements of a contract claim. This Count against the School should be dismissed.

> **6.    Plaintiff's Claim of Wrongful Termination Against Public Policy Fails (Count XVII).**

There exists "a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law[.]" *Adams v. Cochran & Co.,* 597 A. 2d 28, 34 (D.C. 1991). Even accepting Plaintiff's false accusation of unlawful

termination as true, the FAC alleges that multiple reasons motivated the School in making its decision. To establish this intentional tort, the FAC must – and failed to – show that refusing to violate the law was the sole basis for her termination. *Id*.

This claim fails for additional reasons. Plaintiff's employer did not direct her to violate the law, nor any direction against discussing events at Exeter. The law in question is D.C.'s mandatory reporting statute. *See* D.C. Code § 4-1321.02(a). Even if Plaintiff were ordered not to report a reasonable suspicion of child abuse – an order School Defendants would never issue – this statute did not apply to her when she was an intern at The School for Ethics and Global Leadership. The statute requires school officials[5] to call a designated hotline if a child they know in their professional capacity "has been or is in immediate danger of being abused." D.C. Code § 4-1321.02(b)(1)(A). Plaintiff did not know the alleged assault survivor in Plaintiff's professional capacity as an intern at The School for Ethics and Global Leadership. The alleged survivor attended the Exeter School in New Hampshire, where Plaintiff was not a mandatory reporter. For the law to apply, the information Plaintiff gathered would need to give rise to a reasonable suspicion that a child is currently being abused or at imminent risk of abuse. *Id.* She has not established how that would be the case here. This claim should be dismissed.

## V.    CONCLUSION.

For the foregoing reasons, the Court should dismiss all claims against Defendants with prejudice.  Plaintiff's claims are deficient and fail as a matter of law.

---

[5] Plaintiff asserts she was a mandatory reporter while at the School, but that is not supported by the statute, which enumerates school teachers, officials, and coaches as reporters, but does not include other employees. Viewing an intern as a school official requires a strained interpretation of the statute.

Dated: January 16, 2026

**POTOMAC LAW GROUP, PLLC**
*/s/ Susan Sajadi*
Susan Sajadi, D.C. Bar No. 1006572
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, D.C., 20006
Telephone: (917) 238-0990
Fax: (202) 318-7707
ssajadi@potomaclaw.com

18

## **CERTIFICATE OF SERVICE**

On January 16, 2026, I filed the foregoing document with the clerk of the court for the

U.S. District Court for the District of Columbia. I hereby certify that I have served the document

on all counsel and/or pro se parties of record.


/s/ Susan Sajadi
Susan Sajadi

19