**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FABRICIANA DE SORIANO, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No.: 1:24-CV-03573 (CJN) |
| v. | ) |
| | ) |
| NOAH BOPP, et al., | ) |
| | ) |
| *Defendants.* | ) |
| _____ | ) |

**PLAINTIFF'S CONSOLIDATED
OPPOSITION TO DEFENDANTS'
<u>MOTIONS TO DISMISS</u>**

Dated:  February 23, 2026

CENTER FOR EMPLOYMENT JUSTICE
Pamela M. Keith
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................iii

I. INTRODUCTION .................................................................................................................. 4

II. STANDARD OF REVIEW..................................................................................................5

III. RELEVANT FACTS……………………………………………………………………..6

IV. PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS' BOPP, HATORI AND SEGL ........................................................................................ 7

    A. DEFENDANTS' FIRST ARGUMENT IS INSULT RATHER THAN LEGAL ASSERTION…………………………………………………………………………… 7

    B. PLAINTIFF'S TITLE VII GENDER DISCRIMINATION CLAIMS ARE JUSTICIABLE…………………………………………………………………………7

        1. Plaintiff Does not Sue Defendants Bopp and Hatori in their Individual Capacities……………………………………………………………………….8

        2. Plaintiff's Pleading Requirements at This Stage are not Onerous…………...……8

        3. Plaintiff Alleges a Justiciable Title VII Sexual Harassment Claims………………9

            a. Plaintiff's Disparate Treatment Claim is Properly Plead…………………9

            b. Plaintiff Sufficiently Pleads a Hostile Work Environment Claim…..……11

        4. Plaintiff Properly Pleads a Title VII Retaliation Claim…………………………...15

    C. PLAINTIFF'S DCHRA CLAIMS ARE ALSO WELL PLEAD AND JUSTICIABLE...17

    D. PLAINTIFF'S DCHRA CLAIM PERTAINING TO VICTIMS OF SEXUAL ASSAULT IS VIABLE……………………………………………………………………………19

    E. PLAINTIFF PROPERLY PLEADS A CLAIM FOR FAILURE TO ACCOMMODATE A DISABILITY………………………………………………………………………22

    F. PLAINTIFF'S DISABILITY RETALIATION CLAIM IS SOUND…………………26

    G. PLAINTIFF PLEADS VIABLE TORT CLAIMS……………………………………27

        1. The FAC Establishes the Elements of a Tortious Interference Claim……………27

        2. Plaintiff Sufficiently Pleads a False Light Defamation Claim…………………...29

        3. Plaintiff's Intentional Infliction of Emotional Distress Claim is Valid…………..32

        4. Plaintiff's Claim Based on Negligent Supervision is Properly Plead……………34

        5. Plaintiff Sufficiently Pleads a Breach of Contract Claim Against Defendant SEGL…………………………………………………………………………..36

        6. Plaintiff's Wrongful Discharge Claim Should not be Dismissed………………..37

V. PLAINTIFF'S OPPOSITION TO DEFENDANT JACK KENT COOK FOUNDATION'S MOTION TO DISMISS………………………………………………………………………40

    A. PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST DEFENDANT JACK KENT COOK FOUNDATION PLEADS A JUSTICIABLE CLAIM…………………..40

    B. JCKF VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING……42

iii

C. PLAINTIFF'S WRONGFUL TERMINATION CLAIM AGAINST JCKF IS VIABLE…………………………………………………………………….43

VI. CONCLUSION……………………………………………………………………43

## TABLE OF AUTHORITIES

*Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C. 1991).................................................38

*Akonji v. Unity Healthcare, Inc.,* 517 F. Supp. 2d 83 (D.D.C. 2007)..........................................16

*Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16 (D.D.C.2006)........................................33

*Andrews v. D.C. Hous. Auth.*, 316 A.3d 469 (D.C. 2024)...........................................34

*Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295 (D.D.C. 2015)...........................22, 24

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008)................................................14

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015)..........................................28

*Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311 (D.D.C. 2016)....................................8

*Beeton v. District of Columbia*, 779 A.2d 918 (D.C. 2001)......................................32

*Bell Atlantic Corp. v. Twombley*, 544 (2007)................................................................5

*Bergbauer v. Mabus*, 810 F. Supp. 2d 251  (D.D.C. 2011).........................................15

*Broderick v. Donaldson*, 437 F.3d 1226 (D.C. Cir. 2006)...................................16

*Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014)....................................8

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)................................5

*Charlton v. Mond*, 987 A.2d 436, 439 n. 4 (D.C. 2010)................................................31

*Clark County School District v. Breeden*, 532 U.S. 268 (2001).....................................16

*Clawson v. St. Louis Post-Dispatch,* L.L.C., 906 A.2d 308 (D.C. 2006)..............................31, 32

*Davis v. Winfield*, 664 A.2d 836 (D.C.1995)............................................................37

*Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119 (D.C. Cir. 2002)...............................................13

*D.C. v. Bryant*, 307 A.3d 443 (D.C. 2024)..................................................................................................19

*Doe 1 v. George Washington University,* 369 F. Supp. 3d 49 (D.D.C. 2019)..............................14

*Dorsey v. American Express Co.*, 499 F. Supp. 2d 1 (D.D.C. 2007)..................................................5

*Easaw v. Newport*, 253 F. Supp. 3d 22 (D.D.C. 2017).....................................................................9

*Erickson v. Pradus*, 551 U.S. 89 (2007)...........................................................................................5

*Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878 (D.C. 2008)......................................21

*Francis v. Rehman*, 110 A.3d 615 (D.C. 2015).............................................................................36

*Franks v. Edison Elec. Inst.*, 20-cv-3393 (APM) (D.D.C. Mar. 31, 2022).....................................14

*Freeman v. Dal-Tile Corp.*, 750 F.3d 413 (4th Cir. 2014).........................................................15,18

*Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494 (D.C. 2020).........................................................30

*Gary v. Long*, 59 F.3d 1391 (D.C. Cir. 1995)...................................................................................8

*Ghahremani v. Uptown Partners, LLC*, Civil Action No. 05–1270(CKK), 2005 WL 3211463 (D.D.C. Nov. 13, 2005)..................................................................................................................37

*Gibson v. Maryland Motor Vehicle Admin.*, No. CV 20-3220-BAH, 2024 WL 51132 (D. Md. Jan. 4, 2024)....................................................................................................................................18

*Girgenti v. Cali-Con, Inc.*, 544 A.2d 655 (1988)............................................................................37

*Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564 (D.C. 2007)..............................................................34

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)........................................................................11, 12

*Harris v. Ladner*, 127 F.3d 1121 (D.C. Cir. 1997)...........................................................................6

*Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334 (D.C. 2015).....................................29

*Hodge v. Evans Fin. Corp.*, 823 F.2d 559 (D.C. Cir. 1987).........................................................37

*Howard Univ. v. Best,* 484 A.2d 958 (D.C. 1984)......................................................................18, 32

*Howard v. HMK Holdings, LLC*, 988 F.3d 1185 (9th Cir. 2021).....................................................24

*Hunt v. D.C.*, 66 A.3d 987 (D.C. 2013)...........................................................................................25

*Ingram v. D.C. Child & Fam. Servs. Agency*, 394 F. Supp. 3d 119 (D.D.C. 2019).......................27

*Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236 (D.C.1995).....................................37

*Jones v. Air Line Pilots Ass'n*, 642 F.3d 1100 (D.C. Cir. 2011).......................................................8

*Kirkland v. McAleenan*, No. 13-cv-194 (RDM), 2019 WL 7067046 (D.D.C. Dec. 23, 2019)......11

iii

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)...........................................5

*Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247 (D.C.2005).......................................................36

*Kriesch v. Johanns*, 468 F. Supp. 2d 183 (D.D.C. 2007)...........................................................13

*Larijani v. Georgetown Univ.*, 791 A.2d 41 (D.C. 2002).............................................................32

*Mann v. Bahi*, 242 F. Supp. 3d 6 (D.D.C. 2017).......................................................................32

*Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44 (D.D.C. 2015)...........................................8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).........................................................26

*Meyer Grp., Ltd. v. Rayborn*, 695 F. Supp. 3d 39 (D.D.C. 2023).................................................28

*Miles v. Greystar Management Services, LLC*, No. 2:25-CV-00262-APG-EJY, 2026 WL 458287 (D. Nev. Feb. 17, 2026).................................................................................................9

*Moore v. D.C. Water & Sewer Auth.*, Civil No. 18-cv-00657-APM (D.D.C. Nov. 14, 2018).......14

*Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1 (D.D.C. 2010)......................................................33

*Moss v. Stockard,* 580 A.2d 1011 (D.C. 1990).........................................................................31

*NA'IM v. RICE*, 577 F. Supp. 2d 361 (D.D.C. 2008)...................................................................14

*Nattah v. Bush,* 605 F.3d 1052 (D.C. Cir. 2010).......................................................................36

*Nat'l R.R. Passenger Corp. v. Veolia Transp. Serv., Inc.*, 791 F. Supp. 2d 33 (D.D.C. 2011).......29

*Nat'l Trade Prods. v. Info. Dev. Corp.*, 728 A.2d 106 (D.C. 1999).................................................40

*NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890 (D.C.2008).........27, 28

*Newman v. Borders, Inc.*, 530 F. Supp. 2d 346 (D.D.C. 2008)....................................................34

*Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012)...........................................................................28

*Oparaugo v. Watts*, 884 A.2d 63 (D.C. 2005)...........................................................................31

*Osseiran v. Int'l Fin. Corp.*, 889 F. Supp. 2d 30 (D.D.C. 2012)....................................................36

*Palmateer v. International Harvester Co.*, 421 N.E.2d 876 (1981)...............................................38

*Parnar v. Americana Hotels, Inc.*, 652 P.2d 625 (1982)............................................................38

iii

*Paul v. Howard Univ.*, 754 A.2d 297, 309 n. 23 (D.C.2000)............................................................28

*Phillips v. Bureau of Prisons,* 591 F.2d 966 (D.C. Cir. 1979)............................................................6

*Phipps v. Clark Oil & Refining Corp., supra*, 408 N.W.2d 569 (Minn. 1987)............................38

*Rodriguez v. Donovan*, 922 F. Supp. 2d 11 (D.D.C. 2013)............................................................8

*Rose v. United Gen. Contractors*, 285 A.3d 186 (D.C. 2022)............................................................24, 26

*Ross v. United States Capitol Police*, 195 F. Supp. 3d 180 (D.D.C. 2016)............................................................15

*Ryan–White v. Blank*, 922 F.Supp.2d 19 (D.D.C. 2013)............................................................16

*See Hto7, LLC v. Elevate, LLC*, 319 A.3d 368 (D.C. 2024)............................................................42

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585 (D.C. Cir. 2025).......12

*Smith v. Nat'l R.R. Passenger Corp.*, 804 F. Supp. 3d 165 (D.D.C. 2025)............................................................24

*Sonmez v. WP Co. LLC*, 330 A.3d 285 (D.C. 2025)............................................................15, 20, 21

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads*, 565 A.2d 285 (D.C. 1989)...................29

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)............................................................5,6

*Stanwood v. Welch*, 922 F. Supp. 635 (D.D.C. 1995)............................................................42

*Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244 (D.C. Cir. 2007)............................................................36

*Strauss v. NewMarket Global Consulting Group, LLC,* 5 A.3d 1027 (D.C.2010)........................36

*Sundberg v. TTR Realty, LLC*, 109 A.3d 1123 (D.C. 2015)............................................................42

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)............................................................8

*Taylor v. Solis*, 571 F.3d 1313 (D.C. Cir. 2009)............................................................15

*Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330 (D.C. Cir. 1985)............6

*Thomas v. Washington Metro. Area Transit Auth.*, 305 F. Supp. 3d 77 (D.D.C. 2018)...................8

*U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)............................................................25

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (D.C. 2009)............................................................36

*Ward v. District of Columbia*, No. 24-2806 (RBW), 2026 WL 377518 (D.D.C. Feb. 11, 2026)...11

iii

*Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007)...........................................................15

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001).......................................................30

*Zimmerman v. Al Jazeera Am.*, LLC, 246 F. Supp. 3d 257 (D.D.C. 2017)....................................32

## STATUTES AND REGULATIONS

D.C. Code § 2-1402.11(a)(1)...................................................................................................26

D.C. Code §4-1321.02 (12).............................................................................................38, 39

29 C.F.R. § 1630.2(o)(3)........................................................................................................24

## OTHER AUTHORITIES

Prosser & Keeton on Torts § 80 (5th ed. 1984) ……………………………………………34

Prosser & Keeton on Torts § 130 (5th ed. 1984) …………………………………………..38

Restatement (Second) of Torts § 46 …………………………………………………………..34

Restatement (Second) of Torts § 314B (1965) ……………………………………………….34

Restatement (Second) of Torts § 577………………………………………………………….32

Restatement (Second) of Torts § 652E……………………………………………..…..30

Restatement (Second) of Torts § 766 (1979)...............................................................................28

Restatement (Second) of Torts § 767 ……………………………………………………29

iii

iii

**INTRODUCTION**

Despite their elaborate efforts to avoid liability, the essence of Defendants' Motion to Dismiss is to insist that this Court make determinations of credibility in their favor without a micron of record evidence upon which to do so, and at a stage of litigation in which such a judgment would be erroneous as a matter of law. Defendants seek to sway the Court with a wholly inappropriate attack on Plaintiff by asserting:

> The Plaintiff's story is a fabrication. The key events she describes never occurred. Plaintiff's own motion papers reveal an experienced litigant who, over the course of years, has brought conflicting, implausible, and potentially ruinous allegations against multiple schools, educators, and classmates. Even within this action, Plaintiff has alleged facts, each version different from the last, in three state and federal fora. By contrast, Noah Bopp and Shizuha Hatori are accomplished educators of integrity who, outside of this relentless attack, are relative strangers to the legal process. The handful of times they interacted with Plaintiff before she was terminated, their conduct was professional and appropriate.

In a motion to dismiss, the Court cannot be swayed by some view about the veracity of the Plaintiff. That is entirely improper. And it is extremely common for those accused of sexual harassment to deny the allegation. Indeed, it is far more common that the victims of harassment and abuse are ignored, as the Defendants did in this case, than for their claims to be taken seriously. The dominant news headlines establish just how many powerful men and institutions have been willing to ignore, malign, attack and discredit those who allege improper conduct.

Defendants School for Ethics and Global Leadership, Bopp and Hatori were obsessed with protecting the reputation of Philips Academy, rather than adhering to their legal obligations as employers, and ensuring a workplace free of harassment for their employee. Their fixation with trying to diminish and minimize what Plaintiff has to say does not make their arguments in this motion to dismiss more persuasive. Rather, their motion is fundamentally flawed and fails as a

4

whole. For the reasons developed herein, Plaintiff has alleged justiciable claims that must be tested against legal standards, not the insulting and dismissive preferences of Defendants.

Defendant Jack Kent Cook Foundation (hereinafter "JCKF") was in a contractual relationship with Plaintiff, but somehow felt its principle loyalty to was to the other Defendants. JCKF did not disbelieve Plaintiff until it was poisoned by the interference from Defendant's Bopp and Hatori. While the contract with JCKF had the authority and right to withdraw its financial support from Plaintiff, doing so in a manner that is "arbitrary and capricious" violates the contract and the covenant of good faith and fair dealing that underpins every contract.

For the reasons developed herein, Plaintiff has plead sufficient facts to support the claims in the FAC. Defendants makes arguments that are better suited to a motion for summary judgment, and ask the Court to take as true their rendition of facts, rather than adhering to the standards that apply to this stage of litigation. Plaintiff's claims in the FAC are fully justiciable, and thus, the Motions to Dismiss must be DENIED in their entirety.

### STANDARD OF REVIEW

It is well established that at the motion to dismiss stage, a trial court must accept all facts asserted in the complaint as true. *See Erickson v. Pradus*, 551 U.S. 89, 93 (2007) ("…[w]hen ruling on a defendant's motion to dismiss, a judge *must accept as true* all of the factual allegations contained in the complaint.") (emphasis added). *See also, Bell Atlantic Corp. v. Twombley*, 544, 555 (2007); *Dorsey v. American Express Co.*, 499 F. Supp. 2d 1, 2 (D.D.C. 2007). As was made clear by the D.C. Circuit, "A complaint is to be "construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). *See also*

5

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002; *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000); *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997).

All factual doubts must be resolved, and all inferences made in favor of the plaintiff. *Tele-Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334-35 (D.C. Cir. 1985). Further, disposition must be made based on the face of the complaint and matters of general public record only. *See id.; Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C. Cir. 1979). Thus, the Court must reject any effort by a defendant to either ignore facts asserted in a complaint, or to contradict such facts to support its argument to dismiss a claim.

## RELEVANT FACTS

Plaintiff references and incorporates all of the factual allegations of the FAC as if fully restated herein, and rejects any factual allegation that is not alleged by Plaintiff therein. Plaintiff will incorporate facts from the FAC in support of her arguments.

6

**PLAINTIFF'S OPPOSITION TO
THE MOTION TO DISMISS OF
DEFENDANTS' BOPP, HATORI AND SEGL**

I.     DEFENDANTS' FIRST ARGUMENT IS INSULT RATHER THAN LEGAL ASSERTION

Defendants Bopp, Hatori and SEGL (hereinafter collectively "Defendants") start out by arguing that the FAC should be dismissed because it is "confused," "ambiguous" and "unintelligible." They cite several cases for the proposition that a court can dismiss a complaint that is written so poorly or with such convolution that the claims therein cannot be gleaned from the text. What Defendants do not do, is establish in any way why they were unable to ascertain what the claims in the FAC actually are, and what factual allegations support those claims. The very fact that Defendants were able write a long, wordy and unpersuasive motion to dismiss belies the very idea that they couldn't understand what Plaintiff was alleging the FAC.

The facts in the FAC are arranged chronologically, lay out a clear narrative of what happened to Plaintiff, and establish the basis for her claims. They also establish jurisdiction and justiciability of Plaintiff's claims. Defendants argue a basis for dismissal without a micron of actual analysis; and simply citing cases does not constitute analysis. Defendants do not actually show or explain in what way the FAC is "unintelligible." They do not point to any paragraph of the FAC that is so convoluted they could not decipher it, or any allegation that is written in a form or structure that makes no sense. Defendants clearly confuse what they don't like with what they don't understand. Their first argument is based in emotion rather than intellectual analysis, and therefore should be wholly rejected by the Court.

II.     PLAINTIFF'S TITLE VII GENDER DISCRIMINATION CLAIMS ARE JUSTICIABLE

7

A. **Plaintiff Does not Sue Defendants Bopp and Hatori in their Individual Capacities**

As an initial matter, it is well understood in the law that when a Title VII complainant raises allegations of discriminatory conduct by her managers, those claims merge into an allegation against the employer. *See Thomas v. Washington Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 86–87 (D.D.C. 2018) ("[a] supervisory employee may be joined as a party defendant in a Title VII action, [but] that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Count I is a claim against the employer, SEGL, and simply names Bopp and Hatori, but does not break them out as individual defendants. This is also the case with all of Plaintiff's Title VII claims. There are no stand-alone Title VII claims against Defendants Bopp or Hatori in their individual capacities in the FAC.

B. **Plaintiff's Pleading Requirements at This Stage are not Onerous**

Plaintiff's pleading burden at this stage of litigation is not high. While an employment discrimination plaintiff must "plead sufficient facts to show a plausible entitlement to relief," she is "not required to plead every fact necessary to establish a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss." *Bartlette v. Hyatt Regency,* 208 F. Supp. 3d 311, 322 (D.D.C. 2016) (citing *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015) (alterations and quotations omitted) (quoting *Jones v. Air Line Pilots Ass'n*, 642 F.3d 1100, 1104 (D.C. Cir. 2011); *Rodriguez v. Donovan*, 922 F. Supp. 2d 11, 17 (D.D.C. 2013)).

As held in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 510, 511 (2002) "The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." The court in *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) further held that: "[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not

8

plead the elements of a prima facie case." *Easaw v. Newport*, 253 F. Supp. 3d 22, 26-27 (D.D.C. 2017) ("At the motion to dismiss stage, ... an employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss.").

### C.    Plaintiff Alleges a Justiciable Title VII Sexual Harassment Claims

There are essentially three forms of sexual harassment claims: a) quid pro quo harassment; b) disparate treatment based on gender and c) hostile work environment. *See generally*, *Miles v. Greystar Management Services, LLC,* No. 2:25-CV-00262-APG-EJY, 2026 WL 458287, at *3 (D. Nev. Feb. 17, 2026).  In this case, Plaintiff advances only disparate treatment and hostile work environment claims.  Defendants bark up the wrong tree in arguing about *quid pro quo* sexual harassment, because Plaintiff makes no such allegation.

### 1.    *Plaintiff's Disparate Treatment Claim is Properly Plead*

In Count I of the FAC, Plaintiff asserts that she was subjected to disparate terms and conditions of employment when she was subjected to sexual harassment.  In support of that claim, Plaintiff established that prior to her employment with SEGL, she disclosed to Defendants Bopp and Hatori that she was the victim of previous sexual assault that left her traumatized and particularly sensitive to unwanted touch.  *See* FAC ¶¶ 73-75.  She alleged that during her tenure with SEGL, she was subjected to unwanted touching, and sexually and inappropriate comments, particularly around her own sexual activity and virginity (something that is hardly ever asked of men).  *See* FAC ¶¶ 97-110.  Plaintiff specifically alleges that the offensive touches and inappropriate sexual comments were made to her because of her gender.  *See* FAC ¶ 164.  Plaintiff further alleges that she reported to Defendants Bopp and Hatori the she was being subjected to inappropriate sexual comments and complained about unwanted touching by Bopp, Hatori and

9

others. *See* FAC ¶¶ 169-73. Plaintiff further states that the unwanted touching and sexualized comments impacted her to the point that it interfered with her interactions with students, and caused her traumatic response sufficient to interfere with her ability to sleep. *See* FAC ¶¶ 173-74.

The FAC establishes that Plaintiff was subjected to disparate terms and conditions of employment because of her sex. She alleges she was subjected to sexualized and inappropriate comments (*see* FAC ¶¶ 102-04), was inappropriately touched by both Defendant Bopp and Hatori (FAC ¶¶ 97-98; 101; 107-110; 167-173). The FAC highlights that Plaintiff specially discussed with Defendant Bopp why physical touch was so problematic for her, particularly if approached from behind, and Defendant Bopp went out of his way to touch and stroke Plaintiff's body, knowing that it would upset and trigger her. *See* FAC ¶¶ 167-171. Defendant Hatori placed her hand on Plaintiff's thigh in front of a group of people, which caused Plaintiff to have a PTSD-like response of freezing on the spot. *See* FAC ¶¶ 97-98. In other words, Defendants Bopp and Hatori knew that such touching would offend Plaintiff, and did it anyway, in circumstances in which Plaintiff would be publicly embarrassed or humiliated if she responded to it. It is highly doubtful that Defendant Hatori would place her hand on the thigh of a male colleague or that Defendant Bopp would rub the shoulders of a male employee. Plaintiff alleges that Defendants did these acts because they knew they were triggering, and as such, were intending to make her uncomfortable. More importantly, Plaintiff alleges that when she complained about these issues, she was terminated.

In sum, Plaintiff alleges: 1) that she is a member of a protected class; 2) that she was subjected to actions and comments that materially impacted her ability to do her job; 3) that the comments and touching were of a sexual nature and of particular offense because she had asked not to be touched; 4) that Defendants treated her differently than her male colleagues and 4) that

10

they took an adverse action against her because she took offense to these actions. *See* FAC ¶¶ 162-176. As stated in *Ward v. District of Columbia*,

> [s]exual harassment can constitute an adverse employment action, it is discrete acts of sexual harassment that affect the terms or conditions of employment that constitute disparate treatment.

No. 24-2806 (RBW), 2026 WL 377518, at *6 (D.D.C. Feb. 11, 2026) (citing *Kirkland v. McAleenan*, No. 13-cv-194 (RDM), 2019 WL 7067046, at *23 (D.D.C. Dec. 23, 2019) ("In the disparate treatment context, an adverse action is one that affects ... employment or future employment opportunities in an objectively tangible way."). Because Bopp and Hatori themselves were the persons who were inappropriately touching Plaintiff, they made her tolerance of their harassing behavior a term and condition of continued employment, and then terminated Plaintiff when she opposed that behavior. That is exactly the kind of abuse Title VII intended to address.

> As explained the Supreme Court:

> [T]itle VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Plaintiff alleges that SEGL made tolerance of sexualized comments and offensive touching a term of employment for Plaintiff, when such was not the case for her male employees. In doing so, Defendant engaged in disparate treatment based on sex, and the Count I is adequately plead to state a justiciable claim.

> 2.    *Plaintiff Sufficiently Pleads a Hostile Work Environment Claim*

In Count II, Plaintiff pleads sufficient facts to establish that in a short period of less than one month, she was subjected to a hostile work environment. The FAC outlines multiple separate

11

events that took place in a matter of weeks that materially impacted Plaintiffs ability to execute her duties.  Plaintiff outlines at least three instances of unwanted touching:

1) When Defendant Hatori placed her hand on Plaintiff's thigh (FAC ¶¶ 97-98)

2) When Defendant Bopp placed his hands on Plaintiff's shoulders from behind and ran his hand up her arm (FAC ¶¶ 107-110)

3) When a student in the program placed her hands on Plaintiff's waist and arms, and bushed the side of her breasts (FAC ¶ 101).

Plaintiff also outlines that she was repeatedly subjected to unwanted and inappropriate sexual comments.  (FAC ¶¶ 102).  Finally, Plaintiff outlines that she was isolated and denied free movement through the facility (*see* FAC 92-94); was denied both the actual duties she was hired to do (*see* FAC ¶ 95; 115 ), and denied the authority and free movement that came with the job (*see* FAC ¶¶ 85-89).

Importantly, the FAC establishes why Plaintiff had a particular sensitivity to unwanted physical touch (*see* FAC ¶¶ 29-32) and also that she disclosed her aversion to physical touch and the reason for it to both Defendant Bopp and Hatori (*see* FAC ¶¶ 73-75; 96).  The Court must consider the allegations of multiple incidents of unwanted touching, repeated sexually inappropriate comments, and isolation and disparate treatment within a few weeks of employment in the context of a sexual assault survivor who went out of her way to avoid and prevent physical touch.  In this context, Plaintiff's allegations are sufficient to establish that the repeated trespasses on her person were severe and pervasive.

The Court must consider the allegations in the context of the fact that Plaintiff suffers from PTSD related to sexual assault, disclosed that to both Bopp and Hatori, and both of them engaged in gratuitous and unnecessary physical touch of Plaintiff.  It begs the question why would either

of them touch her if they knew of her extreme aversion to touch? Most workers can go years without touching their colleagues for any reason.

Not only did Bopp and Hatori intentionally touch Plaintiff, but when she asked for help with a student who repeatedly touched her, including on her waist and brushing her breasts (*see* FAC ¶ 101), they brushed Plaintiff off and insisted that she endure such behavior to keep her job. Given the impact that such triggering events can have on survivors of sexual violence, Plaintiff properly pleads that these actions severely impacted her. In this context, what was happening to Plaintiff was severe and pervasive, and impacted her ability to sleep, and feel safe in her role. *See* FAC ¶¶ 112-13.

To determine whether an actionable hostile work environment claim exists, [the court] look[s] to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers,* 134 F.4th 585, 597 (D.C. Cir. 2025) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23). Therefore, in considering all of the circumstances in this case, the Court should conclude that multiple occurrences of unwanted, unneeded and traumatizing physical touches in a short period of time could have an effect that is both severe and pervasive. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002).

The holding in *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007) is also helpful. In that case, the plaintiff alleged only a few specific incidents of harassment and intimidation, and further alleged that management was acting to enable the person she accused of bullying her. In finding that the plaintiff had alleged sufficient facts to establish a hostile work environment, the Court rejected the exact argument made by Defendant here, finding that even a few alleged

13

incidents of harassment can constitute a sufficient basis to assert hostile work environment. *Id.*

Put simply, it is not Plaintiffs' burden to present a blow-by-blow chronical of every slight, injury, insult, or degradation at the pleadings stage. The question for the Court at this stage is whether, given the totality of the circumstances, a reasonable jury could conclude that Plaintiff was subjected to a hostile work environment based on her engagement in protected activity. *Franks v. Edison Elec. Inst.*, 20-cv-3393 (APM), at \*1 (D.D.C. Mar. 31, 2022) ("In all, courts use a "totality of the circumstances" test to assess a hostile work environment claim.") (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). The answer to that question is quite clearly "yes." Any further inquiry into Plaintiff's hostile work environment claim should be based on a robust record.

Courts have held that dismissal of a hostile work environment claim without the benefit of a record is improper. *See e.g., NA'IM v. RICE*, 577 F. Supp. 2d 361, 367 (D.D.C. 2008) ("[b]ecause the court may infer a hostile work environment and retaliation based on a hostile work environment from the alleged incidents, and because summary judgment is generally inappropriate before discovery, the court denies the defendant's motion for summary judgment and grants the plaintiff's motion for discovery on these claims."). *See also Moore v. D.C. Water & Sewer Auth.*, Civil No. 18-cv-00657-APM (D.D.C. Nov. 14, 2018) (granting discovery to prove hostile work environment claim); *Doe 1 v. George Washington University*, 369 F. Supp. 3d 49, 67-73 (D.D.C. 2019) (denying motion to dismiss hostile work environment claim); *Bergbauer v. Mabus*, 810 F. Supp. 2d 251, 260 (D.D.C. 2011)(denying motion to dismiss hostile work environment claim).

Finally, Plaintiff properly alleges that Defendant SEGL is liable for the hostile work environment it created because it was placed on notice that Plaintiff was a survivor of sexual assault, that unwanted and unexpected physical touch was triggering to Plaintiff, and that she was

14

enduring such touch from Bopp and Hatori, as well as others. *See Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422-23 (4th Cir. 2014) (adopting "a negligence standard for analyzing an employer's liability for third-party harassment under Title VII[,]" and holding that "an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment" (quotation marks omitted)). *See also Sonmez v. WP Co. LLC*, 330 A.3d 285, 327 (D.C. 2025). So even if part of the severe and pervasive hostile work environment Plaintiff endured was the result of actions from students, Defendant SEGL had an obligation to take remedial and mitigating action, which it absolutely did not do. *See* FAC ¶¶ 104-105.

### D.    Plaintiff Properly Pleads a Title VII Retaliation Claim

In order to sufficiently plead a claim of unlawful retaliation, Plaintiff must show that "she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." *Weber v. Battista,* 494 F.3d 179, 184 (D.C. Cir. 2007). A materially adverse action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009). It is not debatable that termination is an adverse action. *See Ross v. United States Capitol Police*, 195 F. Supp. 3d 180, 202 (D.D.C. 2016) ("[a]n employer's termination of the employment relationship (*i.e.*, his discharge of the employee) is a "quintessential" adverse employment action for Title VII purposes. (citing *Ryan–White v. Blank*, 922 F.Supp.2d 19, 27 (D.D.C. 2013)).

In Count III of the FAC, Plaintiff alleges in that she engaged in protected activity on two occasions: 1) On or about June 27, 2023, when she complained to Defendants Bopp and Hatori about sexual harassment in the form of inappropriate touching and improper sexual comments from students (*see* FAC ¶¶ 101-102; 199); and 2) on or about June 29, 2023, when Plaintiff told

Defendants Bopp and Hatori that she was extremely uncomfortable with the way they had physically and inappropriately touched her (*see* FAC ¶¶ 115-117; 199). It is well established that reporting sexual harassment to a manager or supervisor is activity protected by Title VII. *See Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 94–95 (D.D.C. 2007) (holding that the plaintiff protected activity when she sent a letter to the Director of Personnel alleging that her supervisor engaged in discrimination and sexual harassment) (citing *Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C. Cir. 2006) (stating that "[w]hile no 'magic words' are required," in order to be considered a protected activity a complaint must allege unlawful discrimination in some way).

Plaintiff further alleges that she was terminated from her employment July 11, 2023, only **_twelve days_** after her last protected activity. While Plaintiff does not have to prove causation at the pleadings stage, close temporal proximity between the adverse action and protected disclosure can support an inference of causation. *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 43 (D.D.C. 2004), aff'd, 437 F.3d 1226 (D.C. Cir. 2006) ("A party to a lawsuit can establish causation based on temporal proximity between the protected action and the adverse personnel action. If there is a relatively close temporal proximity, the Courts can infer causation.") (citing *Clark County School District v. Breeden,* 532 U.S. 268 (2001)). Plaintiff asserts that she was terminated because of her protected activity, and thus meets the pleading burden for a justiciable retaliation claim.

### III.    PLAINTIFF'S DCHRA CLAIMS ARE ALSO WELL PLEAD AND JUSTICIABLE

Counts IV, V and VI of the FAC are DCHRA claims that are based on the same factual premises as the Title VII Counts I, II and III. Defendants' argue that Plaintiff's DCHRA claims are insufficient, but the arguments are wide of the mark. First, Defendants assert that Plaintiff seeks to pin liability on Defendants purely because of the actions of students. This is false and a misreading of the FAC. As discussed above, the actions (and failure to act) of Defendants Bopp

16

and Hatori are at the heart of Plaintiffs Title VII claims, and similarly undergird her DCHRA claims.  Defendants then argue that Plaintiff does not outline what sorts of remedial steps Defendant could have taken to mitigate the hostile actions of students.  Defendant fails to cite a single case that stands for the proposition that a Plaintiff must plead what actions a Defendant could have taken but did not.  That is simply not part of the pleading requirement for claims under Title VII or the DCHRA.

Schools, universities and institutions across America have enacted policies to avoid and stem sexual harassment in education.  Those institutions do trainings, disburse written materials, have counselors on staff, do one-on-one meetings with faculty and students, have group discussions, show movies and videos that address bullying and sexual harassment.  There are literally dozens of ways to communicate to young people about inappropriate touching and comments, and what Defendant opted to do when a staffer reported sexual harassment, was literally nothing.

Defendant's DCHRA arguments are wrong because Plaintiff's claims are based on the actions of Bopp and Hatori, but they are also wrong because employers ***can be liable*** for sexual harassment perpetrated by third parties, when they are placed on notice of the same.  For example, in *Freeman v. Dal-Tile Corp.*, 750 F.3d at 416, the harassment claims at issue were based on the behavior of an independent sales representative who interacted frequently with the employer, but was not an employee of the employer.  His regular interaction with the Plaintiff, and her repeated complaints about him and what he was doing, was sufficient to establish liability for her employer's creation of a hostile work environment for failing to take action against the abuser. *See id.  See also Gibson v. Maryland Motor Vehicle Admin.*, No. CV 20-3220-BAH, 2024 WL 51132, at *2 (D. Md. Jan. 4, 2024) (denying summary judgment on plaintiff's claim that she was

17

sexually and racially harassed by third parties when she performed her duties across the State of Maryland, and that her supervisors failed to take her complaints seriously and failed to protect her from situations that endangered her after she informed them of the harassment.).

In any event, the FAC lays out specific allegations against Defendants Bopp and Hatori, both of whom were Plaintiff's direct supervisors and as such were agents of the employer. *See Howard Univ. v. Best*, 484 A.2d 958, 983 (D.C. 1984). Thus, Plaintiff has established a basis for liability of the employer. For the reasons discussed above, Plaintiff's DCHRA disparate treatment and hostile work environment claims are justiciable because she alleges sufficient facts, when taken together and read as a whole, establish that she suffered both disparate treatment and an intolerably hostile work environment.

Defendant's arguments against Plaintiff's DCHRA retaliation claim is just wrong as a matter of law. Defendant is incorrect in asserting that Plaintiff must establish "but for" causation in her retaliation claim. *See* Def. Memo. p. 8. ("The retaliation counts are conclusory because they do not plead nonconclusory facts supporting that "but-for" the protected activity, Plaintiff would not have been terminated; rather, the FAC itself advances alternative, non-retaliatory reasons proffered by the School for the decision, undercutting the plausibility of causation as pleaded."). The standard for DCHRA retaliation claims is not "but for" causation, but rather is "substantial factor" causation. *See D.C. v. Bryant*, 307 A.3d 443, 450 (D.C. 2024), *reh'g denied* (Sept. 27, 2024) ("For decades—including a full decade since the Supreme Court decided *Nassar*—we have consistently applied a less stringent standard than but-for causation to retaliation claims under the DCHRA.").

Plaintiff is not required to allege that her protected activity was the sole cause of her termination, so the fact that Defendant may have had another reason as well (the equally dubious

18

and morally bankrupt desire to prohibit reporting of sexual assault) is not dispositive. As instructed by Court of Appeal in *Bryant*:

> Going forward, judges in the Superior Court should use the substantial-factor test upheld in *Arthur Young* and reaffirmed by us today.

*D.C. v. Bryant*, 307 A.3d at 454. Plaintiff need only allege that her protected activity, was a substantial factor in the decision to summarily terminate her employment. By specifically alleging the close temporal proximity of the termination to her protected activity, as well as the fact that she was opposing sexually harassing behavior from Defendants Bopp and Hatori, both of whom were direct supervisors and the decision makers with respect to her termination, she has done so. At this early stage of proceedings, Plaintiff has sufficiently plead a justiciable claim for retaliation under the DCHRA.

## IV. PLAINTIFF'S DCHRA CLAIM PERTAINING TO VICTIMS OF SEXUAL ASSAULT IS VIABLE

Plaintiff alleges that because of her status as a victim of sexual assault, she was subjected to disparate. *See* FAC ¶¶ 248-262. Plaintiff alleges not only that she was the victim of sexual assault, but also that disclosed that fact to Defendants Bopp. *See* FAC ¶ 252. Then Plaintiff alleges that when a SEGL student spoke to her about a sexual assault at Phillips Exeter Academy (hereinafter "PEA"), Defendant Bopp forbade Plaintiff from reporting it, and then immediately terminated her employment. *See* FAC ¶¶ 255-258. Plaintiff also establishes that she was singled out and treated disparately than her colleagues because no other staffer was prohibited from reporting sexual assault, or terminated for planning to do so. *See* FAC ¶ 256.

There is a reason that the D.C. Council decided that victims of sexual assault need specific protection from employment discrimination, and that reason is that such victims are often not believed, taken seriously, or are silenced. That is what happened in this case. There is precious

19

little case-law on the standards for this particular claim, but in the decision in *Sonmez v. WP Co*. *LLC*, 330 A.2d 285 (D.C. 2025) is instructive. In that case, the plaintiff was a journalist who happened to be a victim of sexual assault. Her employer, the Washington Post, forbade her from reporting on cases involving sexual assault (#metoo cases) because they were concerned about her objectivity. The plaintiff alleged that she was being singled out because of her status as a victim of sexual assault, and despite vehement objection from the defendant, the Court of Appeals reversed the dismissal of the claim. In doing so, the Appeals Court came to the following conclusion:

> [w]hat actually motivated the Post editors to impose the bans on Sonmez is a factual question—a disputed one at this preliminary stage of the trial court proceedings, given our conclusion that Sonmez's complaint plausibly alleges that discriminatory motivations underlay the bans. This disputed factual question cannot be resolved on the pleadings alone (which, we note, is a limitation the dissent appears to overlook). The issue will be ripe for consideration after the parties have been afforded the opportunity to take appropriate discovery—presumably, assuming the evidence of discrimination remains circumstantial at that point, on a defense motion for summary judgment litigated under the three-part burden-shifting *McDonnell Douglas* framework as discussed hereinabove. Ultimately, to avoid summary judgment for the Post, Sonmez will need to present sufficient admissible evidence, unrefuted by the defendants' evidence, from which a jury could conclude that discrimination was a substantial motivating factor in the imposition of the second ban (since Sonmez's Human Rights Act claim based on the first ban is time-barred, as previously explained). That is, assuming Sonmez makes the necessary prima facie showing of a discriminatory motivation and the defendants rely on evidence that the ban was imposed to avoid any appearance of a conflict of interest or bias in the reporting, Sonmez will need to show either that such an explanation is pretextual or, even if true, was not significant enough to overcome her evidence that discrimination was a substantial motivating factor.

*Sonmez v. WP Co. LLC*, 330 A.3d at 335. This case is instructive because it also involves an employer who subjected an employee to disparate rules and standards because of her status as a victim of sexual assault, and because of the assumption that this status rendered her somehow less professional, less neutral or biased in her reporting.

20

In this case, Defendant Bopp singled out Plaintiff because he too believed her to less credible, or to lack judgment because she was a victim of sexual assault. *See* FAC ¶¶ 118-129). Not only did Defendant act to prohibit Plaintiff from reporting the alleged sexual assault, but it terminated her, and then called the sponsor of her scholarship to withdraw support for her to attend university. It cannot be disputed that these are adverse actions.

Defendants' arguments to the contrary lack merit. While reliance on Title VII case law can often be instructive with respect to DCHRA claims, courts have noted that the two statutes are not coextensive. *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 888–89 (D.C. 2008) ("As we review Title VII caselaw, therefore, we do so with the understanding that practices that are merely under Title VII may suffice to establish discrimination under the DCHRA."). This particular claim has no corollary in Title VII jurisprudence.

Plaintiff alleges that Defendant acted against her because it found out that she was going to report a sexual assault, and that Defendant believed that because of her status as a victim of sexual assault, her judgment about that could not be trusted. That is very similar to the situation in *Sonmez*, *supra*. And like in *Sonmez,* Plaintiff must be allowed to develop a record to show that whatever justification Defendant asserts for its actions is not credible. Plaintiff asserts enough for her claim to be plausible, and such is sufficient at the pleadings stage.

V.    PLAINTIFF PROPERLY PLEADS A CLAIM FOR FAILURE TO ACCOMMODATE A DISABILITY

To assert a claim for failure to accommodate a disability, a plaintiff must allege that (1) she was a qualified individual with a disability; (2) his employer had notice of his disability; and (3) his

employer denied his request for a reasonable accommodation. *See Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015). In the FAC, Plaintiff alleges that she suffers from PTSD, and that her condition substantially impairs her in the life activities of sleeping, thinking, working, speaking with people and having normal physical contact with others. FAC ¶ 264. Plaintiff's PTSD was diagnosed by a medical professional on or about June 12, 2019. *See* FAC ¶ 34.

Plaintiff alleges that she disclosed her disability to Defendant Bopp during her interview for the position at SEGL, and in that discussion, Plaintiff requested two accommodations: 1) that she not be touched, and particularly that she not be touched from behind , and 2) that her disability support person be contacted and included in any communications about her job or performance. *See* FAC ¶¶ 73-74. Plaintiff also informed Defendant Hatori of her disability and the need for accommodation. *See* FAC ¶ 96. Plaintiff asked for a disability support person because one of the major contributing factors of PTSD to survivors of sexual assault is being disbelieved by persons in authority. Sadly, this happened to Plaintiff on more than one occasion. *See* FAC ¶¶ 29; 51-55. Plaintiff asked for a disability support person to have a witness to what she says, and to have someone to provide emotional support when facing potentially triggering events or conversations. Plaintiff introduced her disability support person to Defendant Bopp on or about June 23, 2023. *See* FAC ¶267. Neither Defendant Bopp nor Defendant Hatori stated at that time that they objected to allowing him to attend conversations about Plaintiff's performance. Neither of the accommodations requested were costly or difficult to implement, and at no time did Defendant push back or indicate that it was going to refuse to implement the accommodations requested when the accommodations were being discussed.

22

Both Defendants Bopp and Hatori intentionally touched Plaintiff in an offensive way and under circumstances that caused her extreme emotional distress, in direct abrogation of Plaintiff's requested accommodation. *See* FAC ¶¶ 97-98; 107-112). They also refused to take any action when Plaintiff alleged that she was being inappropriately touched by students. *See* FAC ¶¶ 101-103. Defendants Bopp and Hatori did not engage in any kind of interactive process with Plaintiff, or establish in any other way why they could not accommodate her disability. *See* FAC ¶¶ 272 274. Defendants denied Plaintiff's request for a reasonable accommodation by choosing to touch her and to allow others to touch her without taking any action, as well as by not including Plaintiff's disability support person as requested. *See* FAC ¶ 273. These allegations suffice to assert a claim of failure to accommodate under the DCHRA.

Defendants' argument that Plaintiff's claim fails because she:

"[d]oes not plead that involving a non-employee third party in all job communications (presumably including those with students at the School) is a reasonable accommodation under the DCHRA, that the School was obligated to breach confidentiality or management prerogatives to include a non-employee in disciplinary or performance meetings (without any of the requisite vetting or background checks necessary to have an adult around minors), or that any viable alternative was proposed and refused."

Def. Memo. p. 11. As an initial matter, if Defendant had a problem including Plaintiff's disability support person in meetings about her performance, it should have stated so through the interactive process contemplated in disability accommodation statutes. *See Rose v. United Gen. Contractors*, 285 A.3d 186, 193 (D.C. 2022) ("[p]roviding a " 'reasonable accommodation' requires an employer 'to initiate an informal, *interactive process* with the individual with a disability in need of the accommodation' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.' ") (citing *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1193 (9th Cir. 2021) (emphasis in original) (quoting 29

23

C.F.R. § 1630.2(o)(3)). The employer's obligation to engage in an interactive process is triggered when the employee requests an accommodation. *See Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 313 (D.D.C. 2015) (analyzing DCHRA claim) (emphasis in original).

As alleged in the FAC, Plaintiff requested the reasonable accommodations of not being touched, and of having a disability support person included in performance meetings twice, and on neither occasion did Defendants initiate an interactive process, or otherwise indicate that the accommodations requested constituted an undue burden. Defendants raise this notion for the first time in their motion to dismiss.

Defendant cites no authority for the notion that Plaintiff must plead in some special fashion that the accommodations requested were reasonable. According to *Smith v. Nat'l R.R. Passenger Corp.*, 804 F. Supp. 3d 165, 175 (D.D.C. 2025), "[p]laintiff need only show that an 'accommodation' " [she] requested "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," or that "special circumstances" rendered it reasonable. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (citation omitted). In this case, both notions apply. The accommodations requested by Plaintiff were reasonable because they were not costly, complicated or difficult to implement. Nor did they substantially impede the work or operations of Defendant *Hunt v. D.C.,* 66 A.3d 987, 991 (D.C. 2013) (It is "[e]mployer's duty under the ADA (hence under the DCHRA) to "make reasonable accommodation to the known physical or mental limitations of [a disabled] ... employee ... unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program."").

Also, special circumstances make the requested accommodation reasonable because of the mental health needs of a sexual trauma survivor. A person who has endured sexual violence has every right to simply ask to have her personal physical integrity respected to avoid triggers that

could induce severe stress, anxiety, and other PTSD symptoms.  Including a disability support person in discussions with Plaintiff about her performance would have been as simple as patching him in on a phone call or a zoom link.  Instead, Defendants resolutely failed to do so, which escalated Plaintiff's stress, and then they fired a teenage employee and put her on the streets with nowhere to stay and no transportation.  *See* FAC ¶¶143-144.  Given the special circumstances involved, Defendants' refusal to accommodate Plaintiff's requests is particularly egregious.

Once the plaintiff has made a showing that her requests were facially reasonable, the defendant/employer must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402.  Defendants fail to establish any hardship, let alone undue hardship, in implementing the accommodations that Plaintiff requested. But to the extent that there is some dispute about that, Plaintiff is entitled to develop a factual record to contradict Defendant's assertion of undue hardship.

VI.    PLAINTIFF'S DISABILITY RETALIATION CLAIM IS SOUND

Defendants misconstrue Plaintiff's claim of disability retaliation pursuant to the DCHRA. Plaintiff does not allege that she was terminated because she asked for an accommodation, but rather because she was a disabled person in need of an accommodation.  *See* FAC ¶ 285.  The DCHRA prohibits an employer from terminating an employee "wholly or partially" based on disability. D.C. Code § 2-1402.11(a)(1).  *See Rose v. United Gen. Contractors*, 285 A.3d 186, 194 (D.C. 2022).  Plaintiff meets her pleading burden by asserting that she was a qualified person with a disability (*see* FAC ¶¶ 278-79); that she informed her employer of her disability (*see* FAC ¶ 280); and that she was terminated because of her need for accommodation due to her disability. *See* FAC ¶ 285.

25

In considering claims of discrimination under the DCHRA, courts employ the same three-part, burden-shifting test articulated by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *See Rose v. United Gen. Contractors*, 285 A.3d at 194.  Defendant gave Plaintiff two excuses for her termination: 1) that Plaintiff violated the HIPPA privacy rights of the students by sharing medical files; and 2) that Plaintiff engaged in misconduct by sharing a student's birthday so that they could be celebrated (*see* FAC ¶¶ 134-139). Plaintiff alleges both excuses were pretext for discrimination because Plaintiff did not violate the HIPPA rights of the students, and because divulging someone's birthdate is not unlawful.  *See* FAC ¶¶ 138-39.  Plaintiff meets her pleading burden by establishing that she suffered adverse action at the hands of Defendants Bopp and Hatori, and that they decided to terminate her because of her disability.

Plaintiff also alleges that she was terminated because she complained to Defendants Bopp and Hatori that they were not accommodating her, and because she complained about the way they touched her and violated the accommodation they had worked out on or about April 6, 2023.  When Plaintiff complained to Defendants Bopp and Hatori, she engaged in activity protected by the DCHRA.  *See Ingram v. D.C. Child & Fam. Servs. Agency*, 394 F. Supp. 3d 119, 125 (D.D.C. 2019) ("[m]eeting with [supervisor] was a protected activity because [plaintiff] complained about harassment by [supervisor] on the basis of [plaintiff's] anxiety.").  In short, Plaintiff engaged in protected activity when she complained about Defendant's failure to accommodate her.

Within days of her protected activity, Defendant terminated Plaintiff's employment.  *See* FAC ¶ 285.  It is not debatable that termination is an adverse action.  Again, under the DCHRA, Plaintiff's remaining pleading burden is to assert that her engagement in protected activity was a

26

substantial motivating factor in her termination, which Plaintiff clearly does.  *See* FAC ¶ 133.  At the pleadings stage, this is sufficient to assert a claim for retaliation.

VII.    PLAINTIFF PLEADS VIABLE TORT CLAIMS

A.    <u>**The FAC Establishes the Elements of a Tortious Interference Claim**</u>

Count X of the FAC alleges that Defendants Bopp and SEGL impermissibly interfered in the business relationship between Plaintiff and JCKF, which was funding Plaintiff's employment at SEGL, but also and importantly, was to provide her with a substantial scholarship to go to university.  *See* FAC ¶¶ 56-62.  To make out a prima facie case of intentional interference with business relations, the plaintiff must prove: "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.,* 957 A.2d 890, 900 (D.C.2008) (footnote omitted); *see Paul v. Howard Univ.,* 754 A.2d 297, 309 n. 23 (D.C.2000) ("One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." (quoting RESTATEMENT (SECOND) OF TORTS § 766 (1979))).  *See also Onyeoziri v. Spivok,* 44 A.3d 279, 286 (D.C. 2012).  To be actionable, the interference need not cause an actual breach of the business relationship, but instead may cause "merely a failure of performance" by one of the parties.

Plaintiff here alleges that she was in a business relationship with JCKF.  *See* FAC ¶ 289.  She further alleges that Defendants were well aware of this business relationship.  *See* FAC ¶ 290.  Plaintiff asserts that Defendants contacted JCKF specifically to report Plaintiff's conduct and with

27

the specific intent to terminate Plaintiff's employment and her scholarship.  *See* FAC ¶¶ 140-141; 146.  Plaintiff further alleges that because of the contact from Defendants, JCKF terminated her scholarship and its business relationship with the Plaintiff.  *See* FAC ¶¶ 149-151.  This is sufficient to assert a plausible and justiciable claim of tortious interference with a business relationship.

The question remains as to whether Defendant was justified in its actions.  In the District of Columbia, the defendant bears the burden of establishing legal justification or privilege for the inducement of a breach.  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1136–37 (D.C. Cir. 2015); *Meyer Grp., Ltd. v. Rayborn*, 695 F. Supp. 3d 39, 61–62 (D.D.C. 2023) ("Once a prima facie case has been established, it becomes the defendant's burden to prove that his ... conduct was legally justified or proper.").  Thus, the 'motive' behind the interference is the key consideration in determining whether recovery under the tort is available. *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 346 (D.C. 2015).

Section 767 of the Restatement sets out factors to be considered in determining whether an actor's conduct in intentionally interfering with a contract or prospective contractual relation is improper:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

28

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads*, 565 A.2d 285, 290 (D.C. 1989).  This is a fact intensive analysis that requires record evidence.

At the end of the day, as the court observed in *Nat'l R.R. Passenger Corp. v. Veolia Transp. Serv., Inc.*, 791 F. Supp. 2d 33, 61 (D.D.C. 2011), "the determination of whether [an] interference was improper or not is ordinarily left to the jury," and whether the defendants have met their burden to establish this affirmative defense will be a question of fact for the jury to determine.  In short, whatever excuses Defendants assert for their actions in this case, such is to be considered on a full record of evidence by a trier of fact.

### B.    Plaintiff Sufficiently Pleads a False Light Defamation Claim

To succeed on a claim for defamation, a plaintiff must prove: '(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement met the requisite standard; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.'" *See Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 504 (D.C. 2020).  To establish false light claim under District of Columbia law, [plaintiff] must show that (a) the published material places appellant in a false light which "would be highly offensive to a reasonable person," and (b) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. at 1150–51 (quoting RESTATEMENT (SECOND) OF TORTS § 652E).  *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001).[1]

---

[1] The torts of false light defamation and false light invasion of privacy are often analyzed under the same standard. *See Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 140 (D.C. 2021) ("An invasion of privacy-false light claim requires a showing of: (1) publicity; (2) about a false statement, representation, or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be highly offensive to a reasonable person.").

29

In this case, Plaintiff alleges -- and Defendants do not really deny -- that Defendants called the JCKF and told them that Plaintiff had engaged in some form of serious misconduct.  Plaintiff specifically alleges that on or about July 11, 2023, Defendants made a statement to JKCF with the specific intent to get Plaintiff's internship and scholarship money revoked.  *See* FAC ¶ 146; 300. While Plaintiff was not privy to exactly what Defendants said to JCKF, whatever it was lead JKCF to conclude that Plaintiff's "recent conduct as a summer intern runs counter to the Foundation's values and reflected negatively on the image of the Cook Scholar community." *See* FAC ¶ 152. These allegations are sufficient to establish that a comment that painted Plaintiff in a negative light was published to the JCKF by the Defendants.

Plaintiff alleges that the statements about her were false and defamatory (*see* FAC ¶303), and that they were intended to damage Plaintiff's reputation and to punish her.  *See* FAC ¶¶ 304-305. *See Clawson v. St. Louis Post-Dispatch, L.L.C.*, 906 A.2d 308, 313 (D.C. 2006) ("A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.") (citing *Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C. 1990).  As a direct result of Defendants' published false and defamatory statement, JCKF withdrew Plaintiff's funding for the summer internship and also kicked Plaintiff out of the Global Scholars program, which caused Plaintiff obvious financial losses and severe mental and emotional anguish.  *See* FAC ¶¶ 158-161; 302.  This allegations are sufficient to establish a plausible claim for false light defamation.

Defendant essentially argues that it did not defame Plaintiff because what it reported to JCKF was true.  And while truth is a defense to defamation, the establishment of what is and is not

30

true does not occur at the pleadings stage. At this stage, the Court must take as true Plaintiff's allegation that the statement made was false. *Oparaugo v. Watts*, 884 A.2d 63, 78–79 (D.C. 2005) ("When considering a motion to dismiss … we must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the plaintiff.").

Defendant then argues that Plaintiff failed to establish that the defamatory comment was "published." Again, Defendant is wrong as a matter of D.C. law. In this jurisdiction, the term "published" means communicated to any third party. *See Charlton v. Mond*, 987 A.2d 436, 439 n. 4 (D.C. 2010) ("Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed."); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 276 n. 12 (D.D.C. 2017) ("Any act by which the defamatory matter is intentionally or negligently communicated to a third party is a publication.") (*citing* RESTATEMENT (Second) of Torts § 577); *Clawson v. St. Louis Post-Dispatch*, L.L.C., 906 A.2d 308, 313 (D.C. 2006) (holding that publishing means a statement without privilege to a third party) (citing *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). Plaintiff clearly establishes that Defendants published a statement to JCKF, and neither Defendants nor JKCF dispute that fact. Thus, Plaintiff has articulated a plausible and justiciable claim for false light defamation.

### C.    Plaintiff's Intentional Infliction of Emotional Distress Claim is Valid

To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002) (citing *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984). What constitutes outrageous conduct depends on the specific circumstances at issue. *See Mann v. Bahi*, 242 F. Supp. 3d 6, 11 (D.D.C. 2017). In this case, Plaintiff went out of her way

31

to notify both Defendants Bopp and Hatori that she was a victim of sexual assault who suffered from PTSD, and had a severe aversion to being touched by others, particularly from behind. *See* ¶¶ 73-75; 96. Plaintiff plead facts that established the severity of the sexual assault and sexual violence which caused and exacerbated her PTSD, and the impact it had on her, including nightmares, panic and anxiety attacks, depression and other symptoms. *See* FAC ¶¶ 30-33; 40; 49-53. Plaintiff went so far as to admit that she needed reasonable accommodations to stave off her PTSD, and asked both Defendants Bopp and Hatori for those accommodations. *See* FAC ¶¶ 73-75; 83; 96.

It is in that context that the Court must weigh whether Defendants' choice to not only touch Plaintiff against her will, but to do so in public, in front of others, constitutes outrageous conduct. As alleged by Plaintiff, both Defendant Bopp and Hatori acted with awareness and intention. *See* FAC 97-98; 107-112. Plaintiff further alleges that Defendant Bopp's action of coming up from behind her and stroking her arms and shoulders caused her to suffer insomnia, night sweats, sleep paralysis and nightmares. *See* FAC 113. It is well established that some rather minor or innocuous things can trigger severe symptoms in people suffering from PTSD. *See* EXHIBIT 1. Plaintiff is lucky in that she is aware of her PTSD triggers and attempted to mitigate them.

Unfortunately, Defendants did not take Plaintiff's request for accommodation seriously, and more importantly, they did not take **_her_** wellbeing seriously. The question for the Court is whether a jury could find the dismissive and cavalier behavior of Defendants Bopp and Hatori, which caused Plaintiff severe symptoms, and essentially retraumatized her, shock the conscience. When one considers how easy it would have been for Defendants Bopp and Hatori to keep their hands to themselves, their intentional decision not to do so rises to the level of intentional infliction of emotional distress.

32

Severe emotional distress is defined as an emotional response so acute that no reasonable person could be expected to endure it." *Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1, 10 (D.D.C. 2010) (citing *Alexander v. Wash. Gas Light Co.,* 481 F. Supp. 2d 16, 38 (D.D.C.2006)).  In this jurisdiction proof of severe emotional distress can be demonstrated by "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Morton*, 720 F. Supp. at 10 (citing Restatement (Second) of Torts, § 46).  Plaintiff alleges that she suffered panic and anxiety attacks, sleeplessness, flashbacks, night terrors and night sweats because of Defendant's actions, which meets this standard.  Plaintiff sufficiently pleads precisely the kind of severe emotional reactions that are both typical of PTSD, but are also the type of suffering the law was intended to address.  *See* FAC ¶ 310.  Her IIED claim is sufficiently plead and is justiciable.

**D.      Plaintiff's Claim Based on Negligent Supervision is Properly Plead**

Count XIII of the FAC alleges negligence on the part of Defendants.  A common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law.  *See Andrews v. D.C. Hous. Auth.*, 316 A.3d 469, 478 (D.C. 2024) ("[A] common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common law.").  The common law imposes on employers specific duties toward their employees, commonly classified as follows:

1. The duty to provide a safe place to work.
2. The duty to provide safe appliances, tools, and equipment for the work.
3. The duty to give warning of dangers of which the employee might reasonably be expected to remain in ignorance.
4. The duty to provide a sufficient number of suitable fellow servants.
5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

33

*Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007) (citing PROSSER & KEETON ON TORTS § 80, at 569 (5th ed.1984) (footnotes omitted); *See also* RESTATEMENT (SECOND) OF TORTS § 314B (1) (1965) (duty to protect endangered employee).

A common law tort which may be grounds for a statutory claim can support a claim of negligent supervision so long as the common law tort is alleged along with the statutory claim. *Id.* at 577. *See also Newman v. Borders, Inc.*, 530 F. Supp. 2d 346, 350 (D.D.C. 2008). In this case, Plaintiff alleges a common law claim of intentional infliction of emotional distress. This claim lies in the fact that Plaintiff went to such lengths to ensure her workplace was safe for her as a victim of sexual assault who suffers from diagnosed and documented PTSD, as many victims of sexual violence are. *See* FAC 318. Plaintiff alleges that Defendant had a duty to provide her a workplace free of the kinds of triggers that would cause her severe psychological and physical symptoms. *See* FAC ¶¶ 33, 319.

This duty was derived from the fact that Plaintiff specifically asked to be sheltered from unwanted physical touch in her interview, and Defendants agreed to provide that to her. *See* FAC ¶¶ 73-75. This falls squarely under the rubric of providing a safe workplace. Plaintiff alleges that Defendants Bopp and Hatori breached that duty to Plaintiff ***themselves***, and did so intentionally, knowing that it would trigger Plaintiff's PTSD symptoms. *See* FAC ¶¶ 96-98; 107-112. Putting aside the fact that Plaintiff complained about unwanted touch from students, when she complained to Defendants Bopp and Hatori about their actions, they not only ignored her, but made clear that they had no intention of protecting her going forward. *See* ¶¶ 103-107.

Plaintiff pleads that Defendants were negligent in that they had a duty to provide her a workplace free of gratuitous unwanted touch, that they breached that duty, and as a result of that Plaintiff suffered harm. *See* FAC ¶¶ 317-324. This is sufficient to plead a common law claim for

34

negligent supervision, and courts have recognized that such a claim can be coextensive with a claim pursuant to the DCHRA. The court in *Griffin v. Acacia Life Ins. Co.*, 925 A.2d at 577 explained this when it held:

> This is not to say that a claim for negligent supervision cannot be based on a separate common law tort, which might also be grounds for a statutory claim under the DCHRA. "Sexual harassment ... may include misconduct by a co-employee that is independently actionable under the common law, such as battery or intentional infliction of emotional distress. For example, a negligent supervision claim predicated on a battery might be pursued under a theory that the employer was negligent in allowing the battery to happen. Such tort actions are predicated on policy rationales separate and apart from the DCHRA.")

*Id.* (internal citations omitted).

### E. Plaintiff Sufficiently Pleads a Breach of Contract Claim Against Defendant SEGL

In Count XV Plaintiff alleges that Defendant SEGL breached the contract it had with Plaintiff. To *prevail* on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Francis v. Rehman*, 110 A.3d 615, 620–21 (D.C. 2015) (citing *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009)). However, to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach. *See Nattah v. Bush,* 605 F.3d 1052, 1058 (D.C. Cir. 2010).

In order to establish an enforceable agreement under District of Columbia law, the parties both must (1) agree on all material terms and (2) intend to be bound. *See Osseiran v. Int'l Fin. Corp.*, 889 F. Supp. 2d 30, 36–37 (D.D.C. 2012) (citing *Steven R. Perles, P.C. v. Kagy,* 473 F.3d 1244, 1249 (D.C. Cir. 2007); *Kramer Assocs., Inc. v. Ikam, Ltd.,* 888 A.2d 247, 251 (D.C.2005). "The two requirements are closely intertwined because even if the parties intend to be bound by

35

an agreement, the court must be able to determine the terms of the agreement before it can enforce them." *Strauss v. NewMarket Global Consulting Group, LLC,* 5 A.3d 1027, 1033 (D.C.2010). "While a 'meeting of the minds,' or mutual assent, 'is most clearly evidenced by the terms of a signed written agreement ... such a signed writing is not essential to the formation of a contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds.' " *Kramer Assocs.,* 888 A.2d at 252 (quoting *Davis v. Winfield,* 664 A.2d 836, 838 (D.C.1995)). In addition, "an express contract requires an offer and acceptance, and must be supported by consideration." *Ghahremani v. Uptown Partners, LLC,* Civil Action No. 05–1270(CKK), 2005 WL 3211463, at *16 (D.D.C. Nov. 13, 2005). The party asserting the existence of the contract bears the burden of proof. *Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.1995).

Defendant's argument that the written offer of employment is not a contract entirely misses the point. The offer of employment was a written instrument that memorialized the meeting of the minds between Plaintiff and SEGL, and set out the terms of the agreement. *See* FAC ¶ 332. But even if Plaintiff did not have the written instrument, an oral contract can be just as enforceable if the terms are clear. *See Hodge v. Evans Fin. Corp.,* 823 F.2d 559, 561 (D.C. Cir. 1987) (finding oral contract for employment enforceable).

EXHIBIT 8 of the FAC outlines what was understood to be Plaintiff's role, and further that JCKF would provide the funds for the internship. Plaintiff accepted the terms of the contract by appearing at SEGL on the date agreed to by the parties. Plaintiff alleges that Defendant breached the terms of the contract when it terminated Plaintiff's employment months before the termination

36

of Plaintiff's internship.[2]  *See* FAC ¶ 333.  She further alleges that the breach caused her harm.  *See* FAC 334.  Plaintiff alleges enough to survive a motion to dismiss.

### F.       **Plaintiff's Wrongful Discharge Claim Should not be Dismissed**

In Count XVII of the FAC, Plaintiff alleges that she was discharged because she intended to report a sexual assault that she believed occurred at PEA.  Plaintiff describes in the FAC how she came to learn about the sexual assault (*see* FAC ¶¶ 118-129), and further that Defendant SEGL learned of her intention to report the sexual assault to the authorities.  *See* FAC ¶ 130.  In no uncertain terms, Defendants made clear that they were livid at Plaintiff for potentially harming the reputation of PEA, even though Plaintiff was obligated to report the sexual assault.  *See id.* and FAC ¶¶ 126; 347.  Plaintiff alleges that she is a mandatory reporter under D.C. Code §4-1321.02 (12), and thus it would be unlawful not to report a sexual assault of which she was aware.  See FAC ¶ 347.  And Plaintiff finally alleges that Defendants terminated her in substantial part because of her reporting of a sexual assault.  *See* FAC ¶¶ 351.

Whether or not Plaintiff was an at-will employee, it is universally accepted that an employer's discharge of an employee for the employee's refusal to violate a statute is a wrongful discharge in violation of public policy.  *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 32 (D.C. 1991).  Plaintiff sufficiently pleads that Defendant terminated her because of her compliance with D.C. law, and as such her discharge violated public policy.  *See, e.g., Parnar v. Americana Hotels, Inc.,* 652 P.2d 625, 631 (1982) (employer liable in tort for wrongfully discharging employee who cooperated with Department of Justice investigation); *Girgenti v. Cali-Con, Inc.*, 544 A.2d 655, 659 (1988); *Palmateer v. International Harvester Co.,* 421 N.E.2d 876, 880 (1981) (wrongful discharge to terminate employee for reporting crimes of co-workers to law enforcement

---

[2] SEGL also breached the terms of the contract by not actually providing Plaintiff the job duties she was contracted to do.  *See* FAC ¶¶ 67, 115.

37

officials); *Phipps v. Clark Oil & Refining Corp., supra,* 408 N.W.2d 569, 571 (Minn. 1987). Liability is grounded in the principle that the employer may not retaliate against an employee by discharging that employee for refusing to break the law. *See* W. PROSSER & W. KEETON, THE LAW OF TORTS § 130, at 1027–1028 (5th ed. 1984) (hereafter PROSSER). Plaintiff asserts that Defendant engaged in tortious conduct by affirmatively forcing the Plaintiff to choose between breaking the law and keeping her job. And in doing so, Defendant violated public policy. This is sufficient to state a claim.

Defendants' argument that Plaintiff was not a mandatory reporter under D.C. Code §4-1321.02(12) misses the mark. That provision identifies any "school official" as a mandatory reporter. Not just teachers or coaches as alleged by Defendant. Plaintiff was a person of authority over minors who were in residence at SEGL, so she was definitely a "school official." *See* FAC ¶ 67. She held roles as a Teaching Assistant, Executive Assistant and Residential Assistant. *See id.* She lived and worked in close proximity to children, and if a SEGL program attendee had been sexually assaulted, Plaintiff would be required to report it. Defendant argues a distinction without a difference, in that the sexual assault did not involve a SEGL student. The SEGL student was clearly troubled by what she knew or she would not have approached Plaintiff to discuss it. *See* FAC ¶¶118-122. It was perfectly reasonable for both the SEGL student and Plaintiff to believe that Plaintiff had an obligation to act. Defendant makes a distinction that is nowhere to be found in the actual statute. And more importantly, Plaintiff had a reasonable belief that she was required to report.

Indeed, any human being who becomes privy to a sexual assault of a child should report it. To the child endangered by sexual violence, it does not matter who the adult who reports their abuse is, so long as it is reported. Had more adults felt as compelled to protect children as Plaintiff

38

did, perhaps the child trafficking in the Epstein files would have never happened.  Defendant's argument that Plaintiff had no obligation to report a sexual assault is absurd, and it splits hairs in a way that is not supported by a single citation to case law or statute.  Plaintiff states a plausible claim for wrongful discharge and Defendant's effort to dismiss that claim should be denied.

39

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT</u>**
**<u>JACK KENT COOK FOUNDATION'S MOTION TO DISMISS</u>**

I.      PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST DEFENDANT
JACK KENT COOK FOUNDATION PLEADS A JUSTICIABLE CLAIM

Defendant JCKF does not deny that a contract existed between Plaintiff and JCKF.  Nor does it deny that it terminated Plaintiff's scholarship, which severed the agreement.  Rather, it argues solely that its contract with Plaintiff allowed it to terminate her scholarship.  This argument misses the mark.  The agreement between Plaintiff and JCKF only allowed JKCF to terminate the scholarship in certain circumstances.  Paragraph 5 of the contract between JKCF and Plaintiff states as follows:

> The Cooke Foundation may withdraw scholarship support at any time if the Scholar is involved in conduct that is criminal, is convicted of a crime, or is found by his or her institution to have violated academic standards. The Cooke Foundation may also withdraw scholarship support if the Scholar makes false or disparaging statements or engages in other conduct that could harm the reputation of the Cooke Foundation or its Staff.

EXHIBIT 6 to FAC.  This provision does not give JCKF the unilateral right to terminate Plaintiff's scholarship for any reason it wishes however it wishes, as it argues in its brief.

*See* Def. JKCF Memo. ('[t]he Agreement expressly conferred JKCF with the sole discretion to revoke Plaintiff's scholarship based on the factors articulated in the contemporaneous notice, such that Plaintiff cannot seek to invoke this implied covenant to contradict, modify, negate or override the Agreement's express terms.).  JCKF asks the Court to read into this provisions terms that are simply not there.  The words "***<u>sole discretion</u>***" appear nowhere in paragraph 5 of the Agreement, and the Court may not read those terms into the contract.  *See Nat'l Trade Prods. v. Info. Dev. Corp.*, 728 A.2d 106, 111 (D.C. 1999) ("A court cannot "remake an artless contract in order to give it a meaning and efficacy which its ineffective plain wording does not supply.").  Thus,

40

Defendant JKCF assertion that it had sole and unilateral discretion to determine if Plaintiff had engaged in poor conduct is fundamentally off base.

To the contrary, the provision limits the right to terminate to certain specific circumstances. It is not debatable that Plaintiff was not found to have been involved in conduct that was "criminal," or that she was convicted of a crime or of having violated academic standards. So the question before the Court is whether or not Defendant JKCF had other cause to terminate Plaintiff's scholarship. The FAC establishes that JCKF terminated Plaintiff's scholarship solely based on what was reported to it by Defendants SEGL and Bopp. *See* FAC ¶¶ 140-141; 146; 153. It did not permit Plaintiff to tell her side of the story, nor did it receive any documentary proof about anything before it made the decision to terminate Plaintiff's scholarship. *See* FAC ¶¶ 149-150.

Thus, Defendant JCKF terminated Plaintiff because she was ***accused*** of poor conduct, not because she had actually ***engaged*** in poor conduct. By refusing to allow Plaintiff to provide any explanation or rebuttal to SEGL's defamatory statements about her, Defendant JCKF violated the terms of the contract, which clearly only allow for termination of the scholarship if Plaintiff "made" false statements or disparaging statements, or if Plaintiff engaged in other conduct that harmed the reputation of JCKF. A mere accusation from Defendant Bopp was nothing more than that. And by solely relying on an unsubstantiated allegation from Defendant Bopp, JCKF abrogated the contract.

The letter JCKF sent to Plaintiff at EXHIBIT 10 does not outline or specify what conduct allegedly violated paragraph 5 of the contract, nor does it specify in what way Plaintiff misrepresented her academic progress. Plaintiff categorically denies that she engaged in any harmful conduct, and as such, that Defendant JCKF violated the contract by terminating her

41

scholarship without a basis in actual fact to do so.

JCKF's assertion that it had a basis to terminate the contract doesn't make that assertion true. That question is a matter to be resolved by the trier of fact on a robust evidentiary record. *See Hto7, LLC v. Elevate, LLC*, 319 A.3d 368, 379 (D.C. 2024) (Whether that failure to pay the $25,000 in earnest money was a material breach, we reasoned, could not "fairly be resolved" as a matter of law, but instead was a question for the "trier of fact…."); *Stanwood v. Welch*, 922 F. Supp. 635, 642 (D.D.C. 1995) ("The jury must determine if and when a breach of contract occurred, and calculate damages accordingly.").

II.     JCKF VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING

As outlined in the FAC, JKCF had a longstanding relationship with Plaintiff, and had been instrumental in her educational development. *See* FAC ¶¶ 56-62. Over the course of years, it learned that Plaintiff had strong academic prowess and was very resilient. *See id.* JCKF knew that Plaintiff relied on its funds to pay for her education, and further knew that Plaintiff was a survivor of sexual assault. *See* FAC ¶ 64. Plaintiff asserts that the contact between her and JCKF contained an implied covenant of good faith and fair dealing, and that in the circumstances of this case, that covenant required that JCKF conduct a reasonable inquiry that included Plaintiff's rendition of events, before concluding that defamatory allegations against her were true and justified abrogation of the contract. This is sufficient to state a claim under D.C. law.

Plaintiff asserts that JCKF's refusal to give her an opportunity to disprove allegations against her undermined the spirit of the contract between them, and was arbitrary and capricious. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015) ("To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either "bad faith or conduct that is arbitrary and capricious."). The FAC clearly meets this pleading burden by

42

asserting that Defendant JKCF refused to give Plaintiff a chance to defend herself against claims from a third party that was not part of the agreement.  *See* FAC ¶¶ 152-58.[3]

III.    PLAINTIFF'S WRONGFUL TERMINATION CLAIM AGAINST JCKF IS VIABLE

The FAC establishes that JCKF funded her summer employment with Defendant SEGL. *See* FAC ¶¶ 69-70.  Plaintiff alleges that JCKF's decision to withdraw its financial support, and in turn, facilitate her termination, was motivated in part by its desire to stop Plaintiff from reporting a sexual assault at PEA.  *See* FAC ¶352.  If Plaintiff were to prove this, she would have established that both Defendants SEGL and JCKF worked collaboratively to cause Plaintiff to lose her employment in violation of public policy.  This is particularly true because the loss of JCKF funding caused Plaintiff not only to lose her employment, but also to lose her housing for the summer.  *See* FAC ¶¶ 142-143.  No entity should use its financial power to silence the reporting child sexual assault.  Plaintiff asserts that JCKF's actions materially and fundamentally contributed to her wrongful discharge, and thus that is liable for the same.

## **CONCLUSION**

For the reasons discussed herein, Plaintiff's FAC alleges justiciable claims, and Defendants' Motions to Dismiss must be DENIED in their entirety.

Respectfully submitted,

/s/Pamela M. Keith
Pamela M. Keith
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com

---

[3] To the extent that Plaintiff insufficiently pleads the arbitrary and capricious nature of Defendant JCKF's actions, she asked the Court for leave to amend the FAC to add any missing details.

43

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of February, 2026, I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motions to Dismiss to be served on counsel of record via electronic court filing system:


Susan Sajadi
POTOMAC LAW GROUP
1717 Pennsylvania Ave. NW
Suite 1025
Washington, DC 20006
(917) 238-0990
ssajadi@potomaclaw.com

Leslie Paul Machado
Vijay Mago
Kara Yi Lin White
O'HAGAN MEYER PLLC
411 E. Franklin St.
Suite 500
Richmond, VA 23219
(804) 361-4550
lmachado@ohaganmeyer.com
vmago@ohaganmeyer.com
kwhite@ohaganmeyer.com
*Counsel for Defendants*


/s/*Pamela Keith*
Pamela M. Keith

44

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FABRICIANA DE SORIANO,      )
     )
     *Plaintiff,*      )
     )      Case No.: 1:24-CV-03573 (CJN)
v.      )
     )
NOAH BOPP, et al.,      )
     )
     *Defendants.*      )
_____ )

## ORDER

Whereas the Defendants in this matter have filed Motions to Dismiss; and

Whereas Plaintiff has filed a memorandum of law in Opposition to the Motions, and

Whereas the Court has considered the arguments of the parties and the record herein,

Now therefore the Court rules that the Motions to Dismiss are Denied in their Entirety.

So ORDERED,


_____                                        _____
Date                                                      Judge Carl J. Nichols