**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FABRICIANA DE SORIANO,<br><br>*Plaintiff*,<br><br>v.<br><br>NOAH BOPP, SHIZUHA HATORI, THE SCHOOL OF ETHICS AND GLOBAL LEADERSHIP, and JACK KENT COOK FOUNDATION,<br><br>*Defendants*. | Civil Action No. 1:24-cv-03573 (CJN) |

**MEMORANDUM OPINION**

Fabricia De Soriano received a stipend from the Jack Kent Cooke Foundation to serve as a summer intern at the School of Ethics and Global Leadership. After she complained about allegedly inappropriate conduct and commentary by school employees and students, her internship was terminated and the Cooke Foundation revoked her college scholarship. De Soriano asserts here various claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the District of Columbia Human Rights Act, D.C. Code § 2-1402.11, and the common law. All Defendants move to dismiss. For the reasons explained below, the Court grants the Foundation's motion in full and the School Defendants' motion in part.

## I. Background

De Soriano grew up in an economically disadvantageous area in New York but thrived academically, earning a spot in the Jack Kent Cooke Foundation Young Scholar's program as a

middle schooler.[1] ECF 31 ("FAC") ¶¶ 23–25, 56. That program, along with others, gave De Soriano the opportunity to attend two academically rigorous schools—first the Fay Boarding School and then Phillips Exeter Academy. *Id.* ¶¶ 27, 34, 56.

While at Fay, De Soriano was regularly bullied, and in February 2019, was the victim of sexual assault. *Id.* ¶ 29. That incident caused De Soriano to suffer "from nightmares, panic and anxiety attacks, depression, and other symptoms." *Id.* ¶ 33. In June 2019, she was diagnosed with Post Traumatic Stress Disorder and decided not to return to Fay, deciding instead to start ninth grade at Phillips Exeter. *Id.*; *see id.* ¶ 34. De Soriano alleges that, while there, she experienced additional sexual trauma that exacerbated her PTSD symptoms. *Id.* ¶¶ 34–55. According to De Soriano, her PTSD can be triggered by unwanted physical contact. *See id.* ¶ 74.

De Soriano's relationship with the Cooke Foundation continued past middle school. In April 2023, the Foundation awarded her a college scholarship worth $55,000 per year. *Id.* ¶ 58. The agreement memorializing the relationship provided that the Cooke Foundation could withdraw its scholarship support if De Soriano engaged in any "conduct that could harm the reputation of the Cooke Foundation or its Staff." *Id.*, Ex. 6. The scholarship also included a $4,000 stipend for a summer 2023 internship. *Id.* ¶ 62.

De Soriano applied to work that summer at the School for Global Ethics and Leadership in Washington, DC.[2] *Id.* ¶ 66. She alleges that, during her interview with the head of school, Noah Bopp, they agreed that she would serve in three roles: as Bopp's executive assistant, as a teaching

[1] The following facts are drawn from De Soriano's First Amended Complaint, which are of course accepted as true when evaluating the motions to dismiss. *See W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018). Because the allegations and claims are at times difficult to follow and imprecise, the Court has done its best to organize and summarize them here.

[2] De Soriano had previously participated in the School's online programs as a student. *Id.* ¶ 65.

assistant, and as a residential assistant ("RA"). *Id.* ¶ 67. But, when her internship began, she served only as an RA. *Id.* ¶¶ 69–72.

She also told Bopp that she suffered from PTSD and informed him about her experience at Phillips Exeter. *Id.* ¶ 73. She requested two accommodations: that she not be touched, specifically from behind, as that "could trigger flashbacks and other symptoms of hyperstimulation and anxiety;" and that her father be included in any communications about her job or job performance. *Id.* ¶ 74. De Soriano alleges that Bopp agreed to both accommodations. *Id.* ¶ 75.

On June 23, 2023, De Soriano moved into the School's Washington, DC facility. *Id.* ¶ 80. Staff members lived on the basement floor, while she was assigned to an RA room on a different floor near female students. *Id.* ¶¶ 85–86. She was told that she could not go into designated staff areas without permission but noticed that a male RA was not subject to the same restriction. *Id.* ¶¶ 86–87. This exclusion upset De Soriano, as she was a few years younger than the rest of the staff and wanted an opportunity to bond with them. *Id.* ¶ 88. De Soriano alleges that, in these early days, she was "repeatedly subject to snide comments" and "undermining of her authority." *Id.* ¶ 89.

Just two days after she moved in, De Soriano met with another school official (Shizuha Hatori) and raised concerns about being the only intern without access to staff spaces. *Id.* ¶¶ 92–93. She told Hatori that the male RA did not have the same restrictions, and that her lack of access made it difficult to bond with other staff members. *Id.* ¶ 93. Hatori did not change the restrictions, but instead encouraged De Soriano to start more conversations with people. *See id.* ¶ 94. De Soriano also complained to Hatori about her responsibilities differing from those she had been promised when she was hired. *Id.* ¶ 95. Finally, she told Hatori about her PTSD and experience at Phillips Exeter, and requested that she not be touched. *Id.* ¶ 96.

De Soriano alleges that shortly thereafter, at a school-wide meeting, Hatori put her hand on De Soriano's upper thigh, near her groin area. *Id.* ¶ 97. De Soriano also alleges that, at unspecified times, two students engaged in unwanted conduct toward her. *See id.* ¶¶ 101–02. One student repeatedly touched De Soriano's waist and arms, at times coming in contact with her breast, despite De Soriano's warnings. *Id.* ¶ 101. The other student asked De Soriano questions about her sexual activity and virginity. *Id.* ¶ 102. De Soriano voiced her concerns about these instances of inappropriate conduct to both Bopp and Hatori in a meeting on June 27. *Id.* ¶¶ 99, 103. De Soriano alleges that Bopp responded that the incidents were "just student stuff" and cautioned her to "not get into gossip" or turn on other faculty members. *Id.* ¶ 104.

De Soriano alleges that the next day Bopp approached her from behind, "ran his fingertips up her arm and onto her shoulders and gave her shoulder a squeeze, and then ran his hand down the other arm." *Id.* ¶ 107–08. When she asked what he was doing, Bopp winked at her and walked past. *Id.* These actions, De Soriano alleges, were slow and sensual. *Id.* ¶ 109. The incident aggravated De Soriano's PTSD symptoms and she thereafter tried to avoid Bopp. *Id.* ¶¶ 112–14. When they did cross paths, he was "curt" and "dismissive." *Id.* ¶ 114.

On June 29 (six days after she had started), De Soriano met with Bopp and Hatori again. *Id.* ¶ 115. Bopp provided De Soriano a revised job description, which De Soriano alleges was completely different than her originally agreed on responsibilities. *Id.*; *see id.*, Ex. 9. She also complained during this meeting that both had inappropriately touched her in violation of her requested accommodations. *Id.* ¶¶ 115–17.

De Soriano also makes allegations involving a student at the School whom De Soriano had known at Phillips Exeter. Bopp had mentioned this student to De Soriano during her interview and had approved De Soriano speaking with her. *See id.* ¶¶ 76, 118. As it turns out, that student

wanted to discuss with De Soriano the sexual assault of another student while both were at Phillips Exeter. *Id.* ¶¶ 119–25. De Soriano alleges that she told the student that De Soriano would be required to report any conversation about the claimed assault to authorities pursuant to D.C. Code § 4-1321.02(12). *See id.* ¶¶ 122, 126. On July 9, the two talked and De Soriano learned "a great deal of detail" about the alleged sexual assault. *Id.* ¶¶ 124–25. De Soriano then called her father for emotional support and to get his advice on reporting the incident to the police. *Id.* ¶ 127.

Two days later—and less than three weeks after she had started—Bopp and Hatori communicated to De Soriano that her internship was being terminated. *Id.* ¶ 129. Bopp told De Soriano that he knew she had spoken to the other Exeter student and that school staff could not "be having conservations about Exeter" or "discussing things like that." *Id.* ¶ 130. Bopp also stated that he was terminating De Soriano because she violated HIPPA when she allowed students to access school medical records and disclosed a student's birthday to others. *Id.* ¶ 134. And Bopp told her that he had contacted the Foundation about her misconduct and that it would impact her scholarship. *Id.* ¶¶ 140, 146. Later that day, De Soriano contacted the Metropolitan Police Department to report the alleged Phillips Exeter sexual assault she had learned about. *Id.* ¶ 147.

The following week, De Soriano emailed the Foundation's leadership to let them know that she had reported a sexual assault allegation involving a Phillips Exeter student. *Id.* ¶ 150. The Foundation notified De Soriano within hours that it was revoking her scholarship. *Id.* ¶ 149; *see id.*, Ex. 10. The Foundation noted that her conduct as a summer intern did not comport with its values and "reflected negatively on the image of the Cooke Scholar community." *Id.*, Ex. 10. It also had "concerns about [her] academic progress, specifically misrepresentations that were made in materials that were provided to the Cooke Foundation with [her] College Scholar application."

*Id.* According to De Soriano, the information came from Bopp, and she was never afforded the opportunity to defend herself. *Id.* ¶¶ 153, 158.

Thereafter, De Soriano filed a complaint against the School with the EEOC and the D.C. Office of Human Rights on August 4, 2023, and July 10, 2024, respectively. *Id.*, Exs. 1–2. She received a right-to-sue letter from the EEOC on September 19, 2024, *id.*, Ex. 3, and filed her initial Complaint, *pro se*, on December 17, 2024, *see* ECF 1. In September 2025, De Soriano retained counsel and moved to amend her Complaint, which the Court granted.[3] *See* ECF 24; Min. Order on Dec. 2, 2025. The First Amended Complaint names as Defendants the School, Bopp and Hatori (collectively the "School Defendants") and the Foundation, each of which has moved to dismiss for failure to state a claim. *See* ECF 33-1 ("School's Mot."); ECF 35-1 ("JKCF Mot.").

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), of course, a plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court can "consider the facts alleged in the complaint, documents attached as

[3] Bopp and Hatori opposed De Soriano's motion to amend, arguing in part that her attempt to add the School as a defendant on her Title VII claims was untimely, because the statutory filing period had passed. ECF 28 at 4 n.2. It is unclear whether the School Defendants reassert this argument now, as it is only mentioned in the "Background" section of their motion to dismiss. *See* School's Mot. at 2; *see generally id.* In any event, the Court will not dismiss the Title VII claims against the School on this basis. The record here suggests that the School had notice of this suit within ninety days of De Soriano's receipt of the right-to-sue letter and that the School was belatedly added because De Soriano—who was proceeding *pro se* at the time—was mistaken as to the identity of the proper party. *See Wilson v. State of Kan., Dep't of Admin.*, No. 83-4182, 1986 WL 20641, at *3 (D. Kan. Sept. 23, 1986) (explaining that courts facing this type of timeliness argument "have applied Fed. R. Civ. P. 15(c) to determine whether the amendment to the complaint should 'relate back' to the date the original complaint was filed").

exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)). If the complaint fails to establish a claim upon which relief can be granted, the Court must dismiss the case. Fed. R. Civ. P. 12(b)(6).

## III. Analysis

### 1. Title VII Claims Against Bopp and Hatori

Under Title VII, is it unlawful for an employer to discriminate against an employee or applicant for employment "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The proper defendant for a Title VII claim is the plaintiff's employer, *see Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 82 (D.D.C. 2014) (holding that the only defendant against which a plaintiff could proceed under Title VII against was her employer and dismissing claims against individual defendants), which Title VII defines as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day," § 2000e(b).

With respect to Bopp and Hatori, De Soriano has not alleged that either was her employer. *See* School's Mot. at 5; *see* FAC ¶ 2 ("Defendant SEGL . . . is an 'employer' . . ."); *id.* ¶ 3 ("Bopp . . . was *employed* by Defendant SEGL." (emphasis added)); *id.* ¶ 4 ("Hatori . . . was *employed* by Defendant SEGL." (emphasis added)). While Bopp and Hatori may have had supervisory authority over De Soriano, supervisory employees cannot be held liable under Title VII. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). De Soriano's argument that Bopp and Hatori are simply named in Count I but not broken out as individual defendants is both a concession and

contradicted by the Amended Complaint. *Compare* ECF 38 ("Pl.'s Opp.") at 8 *with* FAC at 1. The Court therefore dismisses Counts I, II, and III against Bopp and Hatori.[4]

**2. Counts I and VI: Sexual Harassment Under Title VII and DCHRA**

In Counts I and IV, De Soriano contends that she was subjected to sexual harassment and inappropriate touching in violation of Title VII and the DCHRA. *See* FAC ¶¶ 162–76, 205–19. Claims of sexual harassment are cognizable under these Acts[5] "if the alleged harassment alters, either explicitly or constructively, the terms or conditions of an individual's employment." *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999). "Two kinds of sexual-harassment claims are common: those alleging that the harassment created a hostile work environment and those alleging a quid-pro-quo exchange of employment benefit for sexual favors." *Kennedy v. Berkel & Co. Contractors, Inc.*, 319 F. Supp. 3d 236, 247 (D.D.C. 2018).

An employer is liable for *quid pro quo* harassment "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998). By contrast, where the claim "involves only unfulfilled threats, it should be categorized as a hostile work environment claim."

[4] Following the conclusion of briefing on the motions to dismiss, the Court *sua sponte* raised the question whether an unpaid intern like De Soriano is an "employee" under Title VII. *See* Min. Order on May 4, 2026. The Court has reviewed the parties' supplemental submissions and relevant caselaw, and concludes that where, as here, a statute contains the term "employee" but "does not helpfully define it," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992), "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine," *id.* at 322–23 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989)). And under the general common law of agency, courts consider a variety of factors to determine whether a hired party is an employee. *See Reid*, 490 U.S. at 751–52; *Darden*, 503 U.S. at 323–324. Although the question is close one, the Court cannot conclude that De Soriano has failed to allege enough at this stage that she was an employee.

[5] DCHRA and Title VII employment discrimination claims are evaluated under the same legal standard. *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 57–58 (D.D.C. 2011).

*Id.* at 754. In other words, *quid pro quo* harassment arises when threats are carried out through a tangible employment action, whereas hostile work environment claims involve unfulfilled threats or other offensive conduct more generally. *See id.* at 751, 753; *see also Curry*, 195 F.3d at 659 ("Courts describe an explicit alteration as '*quid pro quo*' harassment and a constructive alteration as 'hostile work environment' harassment." (quoting *Ellerth*, 524 U.S. at 752)).

De Sorano does not allege that Bopp, Hatori, or anyone else at the School made any sexual demands towards her that would support a *quid pro quo* harassment claim. *See generally* FAC; Pl.'s Opp. at 9. Thus, Counts I and IV are "based on severe and offensive conduct and are therefore properly categorized as hostile work environment claims"—which De Soriano does not dispute. *Dews v. Howard Univ. Hosp.*, No. 24-cv-01490, 2025 WL 2377993, at *3 (D.D.C. Aug. 15, 2025); Pl.'s Opp. at 9 ("Defendants bark up the wrong tree in arguing about quid pro quo sexual harassment, because Plaintiff makes no such allegation."). But that makes Counts I and IV duplicative of Counts II and V, so they are also dismissed.

**3. Counts II and V: Hostile Work Environment Under Title VII and DCHRA**

As for De Soriano's hostile work environment claim against the School Defendants, she must plausibly allege that "(1) [she] was a member of a protected class; (2) [she] was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with [her] work performance and creating an intimidating, hostile, or offensive working environment; and (5) the existence of respondeat superior liability." *Davis v. Coastal Intern. Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002) (alterations adopted) (quoting *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir.1997)); *see Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 18 (D.D.C.

2008) ("The legal standard for establishing discrimination under the DCHRA is substantively the same as under Title VII.").

"Sexual harassment creates a hostile environment only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Taylor v. Solis*, 571 F.3d 1313, 1318 (D.C. Cir. 2009) (alterations adopted and internal quotation marks omitted). The work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). To determine whether such an environment existed, courts must consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The Supreme Court has noted that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citation and internal quotation marks omitted).

De Soriano has not alleged that the School Defendants' conduct was sufficiently severe or pervasive to state a hostile work environment claim. De Soriano claims that Hatori "placed her hand on [De Soriano's] upper thigh," "very close to her groin area," during an all-school meeting. FAC ¶ 97. She also claims that Bopp once touched her arm "in a sensual way." *Id.* ¶¶ 108–09. But "isolated instances of unwanted touching," even when sensual in nature, "do not 'meet the demanding legal standard for a hostile work environment.'" *Dews*, 2025 WL 2377993, at *3 (quoting *Lyles v. District of Columbia*, 17 F. Supp. 3d 59, 67–68 (D.D.C. 2014)); *see id.* (holding that two instances where a plaintiff's buttocks was grabbed, including one incident where the

grabbing was accompanied by an inappropriate comment, were not severe or pervasive enough); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007) (concluding that "five discrete acts over [a] two-year period," including touching plaintiff's buttocks, trying to kiss the plaintiff, and touching plaintiff's thigh during a performance review, as well as "infrequent inappropriate comments and staring," did not rise to the severe conduct needed to state a claim for hostile-work-environment discrimination); *Carter v. Greenspan*, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) (determining that an employee's claims that the employer "caressed him on his knee, placed her breast on his arm, and placed her fingers on his buttocks" were not "sufficiently severe in quantity or quality" to create a hostile work environment (alterations adopted and internal quotation marks omitted)).

De Soriano also alleges that she was "repeatedly" the object of "unwanted touching" and "inappropriate and unwanted sexual questions" by two students and that the School Defendants failed to correct that behavior. *See* FAC ¶¶ 101–03. But, in this Circuit, "even multiple instances of physical contact and sexual advances may not be sufficient" to establish a hostile work environment. *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 (D.D.C. 2013). And courts have repeatedly found that conduct far more "severe" than what De Soriano allegedly suffered does not amount to a hostile work environment. *See Cunningham v. Ramjay Inc.*, No. 22-cv-931, 2023 WL 8803431, at *6 (D.D.C. Dec. 20, 2023) (finding that conduct that included "offensive comments, lewd gestures, and unwanted touching" was not severe or pervasive enough to establish a hostile work environment); *Bergauer*, 934 F. Supp. 2d at 77–78 (colleagues propositioning plaintiff for sex, inviting her to get drunk so that she and a colleague could "have a good time," making inappropriate sexual jokes, and engaging in unwanted physical contact did not amount to a hostile work environment).

Furthermore, De Soriano "offers little information about the frequency or severity" of the students' behavior. *Robinson v. District of Columbia*, No. 23-cv-03823, 2024 WL 4722157, at *6 (D.D.C. Nov. 8, 2024) (dismissing a hostile work environment claim where plaintiff did not plead more specific facts about the racist comments and remarks allegedly directed at him). For example, the First Amended Complaint does not state how often De Soriano faced the students' "unwanted touching" and "inappropriate . . . sexual questions," nor does it plead what exactly the students were asking her. *See* FAC ¶¶ 101–03. "Without more," De Soriano "has not plausibly alleged a [sex]-based hostile environment, as opposed to the 'ordinary tribulations of the workplace.'" *Robinson*, 2024 WL 4722157, at *6 (quoting *Faragher*, 524 U.S. at 788); *see also Horsey v. United States Dep't of State*, 387 F. Supp. 3d 97, 110 (D.D.C. 2019), *aff'd*, 805 F. App'x 10 (D.C. Cir. 2020).[6]

**4. Count III, VI, IX: Retaliation Under Title VII and the DCHRA**

De Soriano claims that the School Defendants unlawfully terminated her in retaliation for complaining about her treatment. *See* FAC ¶¶ 193–204 (alleging gender discrimination retaliation under Title VII); *id.* ¶¶ 236–47 (alleging same under DCHRA); *id.* ¶¶ 277–87 (alleging disability discrimination under the DCHRA). "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because [s]he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)

[6] In her opposition brief, De Soriano suggests that her inability to access "staff spaces" and undesirable job responsibilities contributed to the hostile work environment. *See* Pl.'s Opp. at 12. But "complaints over undesirable job responsibilities and office arrangements do not support a hostile work environment cause of action." *Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008); *see Brooks v. Grundmann*, 851 F. Supp. 2d 1, 6 (D.D.C. 2012), *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014) (stating that "non-selection for a desirable position [and] assignment to undesirable duties . . . do not establish a hostile work environment.").

(quoting 42 U.S.C. § 2000e–3(a)). Similarly, the DCHRA makes it unlawful for "an employer to retaliate against a person on account of that person's opposition to any practice made unlawful by the DCHRA." *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 97 (D.D.C. 2012). To state a claim for retaliation under either Act, "a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action by her employer, and (3) the two are causally connected." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (alterations adopted and internal quotation marks omitted).

De Soriano has plausibly pleaded a retaliation claim. She alleges that she engaged in statutorily protected activity by informally complaining to Bopp and Hatori about having faced discriminatory conduct, such as inappropriate touching and violations of her PTSD accommodation. *See* FAC ¶¶ 116–17, 199; *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 150 (D.D.C. 2013) ("[P]rotected activity encompasses utilizing informal grievance procedures, such as complaining to management or human resources about the discriminatory conduct."). She alleges that she suffered a materially adverse employment action when she was terminated by the School. *See* FAC ¶¶ 201–02; *Hornsby v. Watt*, 217 F. Supp. 3d 58, 65 (D.D.C. 2016) ("Ordinarily, a materially adverse action involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." (internal quotation marks omitted)). And the two-week time span between her protected activity and termination is a sufficiently narrow temporal gap from which to infer causation. *See* FAC ¶¶ 201–02; *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013) ("To establish a causal connection between the protected activity and the termination—in the absence of direct evidence—a plaintiff may show 'that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took

place shortly after that activity.'" (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985))); *Spence*, 109 F.4th at 540 (explaining that causation may be inferred from a two- to three-month gap).

The School argues that De Soriano fails to plausibly allege causation because she pleads alternative, non-retaliatory reasons for her termination. *See* School's Mot. at 8, 12. Although the First Amended Complaint is hardly a model of clarity and precision, it appears De Soriano only pleads the School's proffered reasons for her termination to then allege that those reasons were pretextual. *See* FAC ¶¶ 130–39. And, in any event, "at the motion-to-dismiss stage, a Title VII plaintiff is not generally required to plead facts that specifically rebut a defendant's legitimate, non[retaliatory] reasons or establish [pretext]." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 23 (D.D.C. 2013). Any assertion that De Soriano was terminated for a legitimate, non-retaliatory reason is a "factual question, not a deficiency in [De Soriano's] pleading, and therefore [ ] cannot be a basis for dismissing [her] Complaint at this stage of the litigation." *Id.* at 29. Accordingly, De Soriano may proceed on Count III (against the School), Count VI (against the School Defendants), and Count IX (against the School and Bopp). *See Craig v. District of Columbia*, 74 F. Supp. 3d 349, 378 (D.D.C. 2014) ("Unlike Title VII, the DCHRA allows for individual liability under certain circumstances.").

**5. Count VII: Sexual-Assault Discrimination Under the DCHRA**

De Soriano claims that Bopp discriminated against her because of "her status as a victim of sexual assault" in violation of the DCHRA. FAC ¶ 260. The DCHRA prohibits an employer from discriminating on the basis of one's "status as a victim or family member of a victim of domestic violence, [or] a sexual offense." D.C. Code § 2–1402.11. To plead a claim of discrimination under the DCHRA, "a plaintiff need only allege that she (1) suffered an adverse

employment action (2) because of her membership in a protected category." *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016). "[A]t the motion-to-dismiss stage, a plaintiff does not need to prove a *prima facie* case of discrimination," *id.* at 86, but "she still must plead sufficient facts to show a plausible entitlement to relief," *id.* at 87.

De Soriano does allege that she suffered an adverse employment action (the termination of her internship), *see* FAC ¶ 129, but she has not adequately alleged that her termination was "because" she was a victim of sexual assault. De Soriano does not assert that Bopp, Hatori, or anyone else at the School treated individuals who were *not* victims of sexual assault differently than they treated her. *Cf.* *McNair*, 213 F. Supp. 3d at 87 (dismissing a claim of gender discrimination because plaintiff had not alleged that the defendant "specifically treated *men* differently than they treated her as a woman"). In fact, De Soriano's allegations imply that she was the only School employee who was terminated or reprimanded during the entire summer program. That fact is inconsistent with pleading that she was "treated differently than her [non-victim] counterparts on account of her [victim status]; rather [it] suggest[s] that, at best, she was treated differently from all other employees—which presumably includes both" those who share her status and those who do not. *Id.*

De Soriano's reliance on *Sonmez v. WP Co. LLC*, 330 A.3d 285 (D.C. 2025), is unpersuasive. There, the D.C. Court of Appeals held that a plaintiff had plausibly alleged discrimination based on her status as a victim of sexual assault by outlining multiple instances in which "editors said things to her that inferably evinced hostility, skepticism, or criticism based on her status as a victim of sexual assault." *Id.* at 319–21. De Soriano makes no such allegations, instead claiming that the School was concerned about her conversations with a student and her mishandling of student medical records. *See* FAC ¶¶ 129–34. She has therefore failed to allege

facts to "support a plausible inference that her status as a victim of a sex offense . . . was a motivating factor in adverse actions taken against her." *Sonmez*, 330 A.3d at 317–18 (cleaned up).

**6. Count VIII: DCHRA Failure to Accommodate**

De Soriano claims that the School failed to provide her reasonable accommodations in violation of the DCHRA, which prohibits covered employers from discriminating against individuals based on their disability. *See* D.C. Code § 2–1402.11(a)(1). To state a failure-to-accommodate claim under the DCHRA (which is governed by the same standards as ADA claims), a plaintiff must allege that (1) she was a "qualified individual" with a disability; (2) that the employer had notice of that disability; and (3) that the employer denied the plaintiff's request for a reasonable accommodation. *George v. Molson Coors Beverage Co. USA, LLC*, No. 20-cv-1914, 2022 WL 2643537, at *5 (D.D.C. July 8, 2022) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). An individual is "qualified" if she can, "with or without reasonable accommodation, [ ] perform the essential functions of the employment position that" she holds. *Minter v. District of Columbia*, 809 F.3d 66, 69–70 (D.C. Cir. 2015) (quoting 42 U.S.C. § 12111(8)). And an accommodation is "reasonable" if it "allow[s] an employee to perform the essential functions of the job, without imposing undue hardship on the employer." *Saunders v. Galliher & Huguely Assocs., Inc.*, 741 F. Supp. 2d 245, 249 (D.D.C. 2010). "[A] [r]easonable accommodation does not require an employer to restructure an existing job to remove some of its essential functions." *Jones v. Univ. of D.C.*, 505 F. Supp. 2d 78, 90 (D.D.C. 2007).

As for "qualified individual," it's a close question whether De Soriano has plausibly alleged that she could perform the essential functions of her duties with a reasonable accommodation. After all, she claims that her PTSD "substantially impairs her in the major life activities of sleeping, thinking, working, speaking with people, and having normal physical contact

with people."[7] FAC ¶ 264. And the Amended Complaint suggests that being an RA/TA requires thinking, working, speaking with people, and potentially some normal physical contact. *See id.*, Ex. 9 (stating job responsibilities such as "facilitating . . . discussion groups," "diagramming conversations," "helping to arrange chairs," "traveling with students to speaker sessions," and [a]ssist[ing] with meal prep/set-up/clean up," among others). But "[a] determination that a plaintiff is not a qualified individual is rare on a motion to dismiss, given that a finding of this nature requires unspooling if the plaintiff can perform the essential functions of a position, and determining a job's essential functions is typically a factual issue to be determined by a jury." *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 94 (D.D.C. 2021) (internal quotation marks omitted).

Of course, if De Soriano had "not indicated that [s]he could perform the essential elements of [her] job . . . and [ ] ha[d] not identified any reasonable accommodation that would allow [her] to do so," a court could find, even at this early stage, that she was not a qualified individual. *Saunders*, 741 F. Supp. 2d at 249. But here, it can be reasonably inferred—despite De Soriano's allegations on the topic being sparse and imprecise—that she could have performed the essential duties of her role had the School Defendants honored the accommodations they granted her. *See Harris v. Potter*, 310 F. Supp. 2d 18, 20 (D.D.C. 2004) ("When considering a Motion to Dismiss, the Court construes . . . all reasonable inferences in the light most favorable to the plaintiff." (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 508 (2002))). She therefore has sufficiently alleged that she is a "qualified individual."

---

[7] "Even if [an] allegation hurts plaintiff's case, the Court must consider the allegation as part of the record for review." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015).

As for the reasonableness of the requested accommodations, that is again a close question. Remember that De Soriano requested, as an accommodation, that she not be touched at all, especially from behind; and that her father be included on all communications about her job or job performance. FAC ¶ 74. The School Defendants *now* argue that both requests were unreasonable—the first because incidental touching is unavoidable when working with teenagers who share common living space with staff, and the second because it would have required the School to breach confidentiality or management prerogatives. *See* School's Mot. at 10–12. But Bopp allegedly agreed to both accommodations when De Soriano requested them, suggesting that they were reasonable. FAC ¶ 75. Furthermore, whether incidental touching was unavoidable and whether including De Soriano's father in communications was impossible "are questions of fact that are inappropriate for resolution on a motion to dismiss." *Buie v. Berrien*, 85 F. Supp. 3d 161, 172 (D.D.C. 2015); *see Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013) ("[T]he parties dispute the reasonableness of the accommodation offered by the District—an issue that is not appropriately decided on a motion to dismiss."). The Court "declines to engage in the fact-intensive reasonableness inquiry here without the benefit of a full evidentiary record." *Pappas*, 513 F. Supp. 3d at 97.

**7. Count X: Tortious Interference with a Business Relationship**

De Soriano claims that the School and Bopp tortiously interfered with her business relationship with the Cooke Foundation. FAC ¶¶ 289–93. "To survive a motion to dismiss on a claim for tortious interference with a business relationship or a contract, the plaintiff must plead: (1) the existence of a valid business relationship or contract; (2) knowledge of the business relationship or contract on the part of the tortfeasor; (3) intentional interference inducing or causing a breach of the relationship or contract; and (4) damages resulting from the breach." *Cheeks of N.*

*Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 97 (D.D.C. 2011). This tort arises only "when a defendant interferes with a contract between the plaintiff and some third party." *Bayatfshar v. ARINC, Inc.*, 961 F. Supp. 2d 206, 211 (D.D.C. 2013). It will "not lie when the defendant itself is a party to the contract." *Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 738 (D.C. Cir. 1990).

Though not stated expressly, the Amended Complaint appears to plead that there was an agreement among the Foundation, the School, and De Soriano regarding the $4,000 stipend and her internship. *See* FAC ¶¶ 62, 70 (alleging that her stipend from the Foundation was dependent on her summer internship with the School); *see also id.*, Ex. 7 (explaining that the Foundation's "Internship Stipend" was conditioned on completion of an unpaid internship with the School). Because the School itself was a party to the alleged stipend agreement, it cannot be liable for tortious interference with *that* contractual relationship between De Soriano and the Foundation. *See Farmland Indus., Inc*, 904 F.2d at 738 ("[T]he tort of interference with contractual relations does not lie when the defendant itself is a party to the contract."); *Donohoe v. Watt*, 546 F. Supp. 753, 757 (D.D.C. 1982) ("A defendant's conduct under his own contract with the plaintiff may or may not rise to the level of a breach of that contract, but it cannot support an action for interference with it.").

As for the Scholarship Agreement between just De Soriano and the Foundation, De Soriano has failed to allege that the School or Bopp acted "improperly" by notifying the Foundation about De Soriano's termination. To sustain a claim of intentional interference with business or contractual relationships, a "defendant's interference must be improper." *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 239 (D.D.C. 1996). A defendant "may avoid liability if he can establish that his conduct was legally justified or privileged." *Onyeoziri v. Spivok*, 44

A.3d 279, 286–87 (D.C. 2012) (internal quotation marks omitted). By alleging that the Foundation's stipend was conditioned on her internship with the School, De Soriano has pleaded facts that make it implausible to infer that the School acted improperly by notifying the Foundation of her termination.

**8. Count XI: Defamation and/or False Light**

De Soriano claims that Bopp defamed her by conveying false information about her conduct to the Foundation. *See* FAC ¶¶ 299–307. "To state a claim of defamation under District of Columbia law, a plaintiff must allege: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."[8] *Holloway v. Howard Univ.*, 206 F. Supp. 3d 446, 452 (D.D.C. 2016) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)). But De Soriano's Amended Complaint fails to identify any particular statement made by Bopp (or the School) to the Foundation, let alone one that was false or defamatory. "Nor does the complaint allege that any defendant *published* a false and defamatory statement to a third party." *Holloway*, 206 F. Supp. 3d at 453 (emphasis added). To be sure, De Soriano states that Bopp "admitted that . . . he made defamatory statements about Plaintiff's conduct," FAC ¶ 141, but that assertion is far too conclusory to survive a motion to dismiss.

[8] De Soriano's Amended Complaint labels Count XI as "Defamation – False Light." *See* FAC at 37. Under District of Columbia law, "false light claims are treated the same as defamation claims." *Vasquez v. Whole Foods Mkt., Inc.*, No. 17-cv-00112, 2023 WL 2663019, at *8 (D.D.C. Mar. 28, 2023).

### 9. Count XII: Intentional Infliction of Emotional Distress

De Soriano's intentional infliction of emotional distress claims against Bopp and Hatori require "(1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes severe emotional distress." *Nono v. George Washington Univ.*, 245 F. Supp. 3d 141, 148 (D.D.C. 2017) (citing *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1037 (D.C. 2015)). To be "extreme and outrageous," the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 148–49 (quoting *Newmyer*, 128 A.3d at 1037).

De Soriano alleges that Bopp and Hatori caused her "extreme emotional distress" when they inappropriately touched her. *See* FAC ¶¶ 311–12. She points to the same two incidents of touching—one by Bopp and one by Hatori—that serve as the basis for her hostile work environment claims. *Id.* Neither Bopp's alleged stroking of De Soriano's arms, nor Hatori's alleged touching of her thigh, constitute the kind of conduct that "go[es] beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." *Nono*, 245 F. Supp. 3d at 148–49 (quoting *Newmyer*, 128 A.3d at 1037). To be sure, the D.C. Court of Appeals has held that "a plaintiff may establish a *prima facie* case of intentional infliction of emotional distress by demonstrating repeated sexual harassment by a supervisor." *Paul v. Howard Univ.*, 754 A.2d 297, 308 (D.C. 2000). But that holding has been limited "to cases in which the plaintiff can show a *pattern* of harassment." *Id.* (emphasis added) (internal quotation marks omitted). The two "isolated incidents" of sexual harassment that De Soriano alleges are thus insufficient to state an IIED claim. *Id.*

**10. Count XIII: Negligent Supervision**

De Soriano also claims that the School, Bopp, and Hatori, are liable for "negligent supervision." FAC ¶¶ 317–23. To state such a claim, "a plaintiff must show that the defendant knew or should have known that its employee behaved in a dangerous or otherwise incompetent manner, and that the defendant, having such knowledge, failed to adequately supervise or train the employee." *Penn v. District of Columbia*, No. 22-cv-0745, 2023 WL 143338, at * 8 (D.D.C. Jan. 10, 2023) (citing *Godfrey v. Iverson*, 559 F.3d 569, 571 (D.C. Cir. 2009)). At the motion to dismiss stage, courts look to whether a plaintiff's allegations "give rise to a reasonable inference that [supervising] officials were on constructive notice of dangerous or incompetent behavior by" their employees. *See Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 255 (D.D.C. 2018).

De Soriano does not allege that the School, Bopp, or Hatori had actual or constructive knowledge of any inappropriate behavior by any of the students or staff *prior to* the few incidents of inappropriate touching De Soriano alleges here. "Allegations of such knowledge could take the form of claims that [students and/or faculty] had been previously involved in similar incidents, that supervisors knew about aspects of the [students' and/or faculty members'] behavior that would have or should have put them on notice for the need for additional supervision or training, that the [School] failed to discipline or retrain [School staff] after serious [sexual harassment] incidents, or that similar incidents occurred with such regularity that the [School] was on notice of a common propensity among [students and staff]." *Penn*, 2023 WL 143338, at *9 (citing *Spiller*, 302 F. Supp. 3d at 255). But the First Amended Complaint alleges only that "negligence and failure to properly supervise both staff and students was the proximate cause of Plaintiff's mental and emotional pain and suffering." FAC ¶ 323. Such "[t]hreadbare recitals of the elements of the elements of a cause

of action, supported by mere conclusory statements, do not suffice" to state a claim.[9] *Iqbal*, 556 U.S. at 678; *cf. Spiller*, 302 F. Supp. 3d at 255 (holding that similar allegations were insufficient to state a negligent training or supervision claim).

**11. Count XIV and XV: Breach of Contract Against the Foundation and School**

De Soriano alleges a breach of contract claim against the School for the termination of her internship, and against the Foundation for its termination of her scholarship. FAC ¶¶ 327, 333. A breach of contract claim requires "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

As for the School, De Soriano has not identified any written or oral contract between them, nor has she indicated "what any of the specific terms of that alleged contract might have been such that [the School's] actions could constitute a breach of its contractual obligations."[10] *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 125 (D.D.C. 2012). Her allegations that she entered a contract with the school on April 6, 2023, and that the School breached that contract on July 11, 2023, are wholly conclusory. *See id.* (in the District, where "employment is presumed to be terminable at will by either party at any time," a plaintiff has no contract-law remedy where she has not alleged that termination was subject to specific preconditions).

---

[9] To the extent that De Soriano's negligent supervision claim against Bopp and Hatori is about their own conduct, they could not have negligently supervised themselves. *See James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) ("[T]he tort of negligent supervision allows a plaintiff to hold employers directly liable for their failure to properly supervise *their personnel*." (emphasis added)).

[10] Although the Complaint alleges that the contractual obligations between her and the School were "memorialized in EXHIBIT 10," that document is a letter from *the Foundation*, not a contract between De Soriano and *the School*. *See* FAC, Ex. 10.

As for the Foundation, it revoked her scholarship pursuant to provisions in their contract that expressly permitted it to do so. As noted above, the Scholarship Agreement gave the Foundation authority to (1) "withdraw scholarship support if the Scholar [made] false or disparaging statements or engage[d] in other conduct that could harm the reputation of the Cooke Foundation." *See* FAC, Ex. 6, Part I, ¶ 5. It also stated that "[m]isrepresentations in the application, or in other materials submitted by the Scholar, [would] render [the] agreement null and void." *See id.*, ¶ 6. De Soriano argues that the Foundation "terminated [her] scholarship solely based on what was reported to it by Defendants SEGL and Bopp." Pl.'s Opp. at 41; *see* FAC ¶¶ 149–58. But the Amended Complaint alleges—both through factual assertions and an incorporated exhibit (Exhibit 10)—that (1) she reported her conduct at the School to the Foundation herself, *see* FAC ¶ 150 ("Plaintiff sent an email to [Foundation] leadership" approximately 90 minutes before her scholarship was revoked "advising the [Foundation] of the sexual assault allegation that she reported involving a PEA student."), and (2) the Foundation revoked her scholarship, at least in part, because of "concerns about [her] academic progress" and "misrepresentations that were made in materials that [she] provided . . . with [her] College Scholar application," *see* FAC, Ex. 10. Because De Soriano herself alleges reasons for the revocation that were permitted by the Scholarship Agreement, her breach of contract claim is not viable. *See Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 289–91 (D.D.C. 2018) (dismissing a breach of contract claim because two contractual provisions "explicitly allow[ed]" the defendant's allegedly actionable conduct).

**12. Count XVI: Breach of the Covenant of Good Faith and Fair Dealing**

De Soriano also claims that the Foundation breached the covenant of good faith and fair dealing by revoking her scholarship based only on the School's representations of her conduct,

without giving her an opportunity to defend herself. FAC ¶¶ 339–40. In the District of Columbia, "[e]very contract includes an implied covenant of good faith and fair dealing." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013). "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Id.* But a party does not breach the covenant if it fails to do something it had no contractual agreement to do. *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014) ("[T]he UDC defendants did not breach the covenant of good faith and fair dealing by failing to do something they had no obligation to do.").

The Scholarship Agreement does not include any provision entitling De Soriano to the process she claims she was due, nor does she otherwise allege that the Foundation had a contractual obligation to allow her to contest or appeal a revocation decision. *See* FAC, Ex. 6. Thus, the Foundation's failure to afford De Soriano "an opportunity to defend herself," FAC ¶ 340, could not have violated the covenant of good faith and fair dealing. *See Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 13 (D.D.C. 2016) (holding that a defendant's failure to do something it had no contractual obligation to do was "not in bad faith, arbitrary, or capricious").[11]

---

[11] In her opposition brief, De Soriano requests, in a footnote, that the Court grant her leave to again amend her complaint to add missing details if she failed to plead the arbitrary and capricious nature of the Foundation's actions. Pl.'s Opp. at 43 n.3. The Court declines to do so. That footnote does "not satisfy the requirement that a motion to amend provide some 'indication of the particular grounds on which amendment is sought.'" *Whiting v. AARP*, 637 F.3d 355, 365 (D.C. Cir. 2011) (quoting C*ity of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009)). And in any event, "dismissal with leave to amend would be futile [here] because [De Soriano] would need an entirely fresh set of facts on which to base [this] claim because the facts alleged affirmatively preclude relief." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 235 n.2 (D.D.C. 2007) (citing *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998)).

### 13. Count XVII: Wrongful Termination in Violation of Public Policy

De Soriano alleges common-law wrongful termination against the School, Bopp, and the Foundation. She claims that the School's decision to terminate her internship and the Foundation's decision to withdraw her college scholarship were "motivated by animus against her because of her decision to report a sexual assault." FAC ¶ 351; *see id.* ¶ 352.

As noted above, "[u]nder District of Columbia law, 'an employer may discharge an at-will employee at any time and for any reason, or for no reason at all.'" *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 134 (D.D.C. 2008) (quoting *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991)). "[T]o plausibly claim wrongful termination, the plaintiff must allege facts placing her claim within an exception to the at-will employment doctrine." *Williams v. Chugach Alaska Corp.*, 210 F. Supp. 3d 25, 31 (D.D.C. 2016). "The District of Columbia Court of Appeals has recognized a very narrow public policy exception to the at-will employment doctrine: a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* (alterations adopted and internal quotation marks omitted).

As to the Foundation and Bopp, De Soriano has not plausibly alleged that either was her employer. In the Scholarship Agreement, De Soriano expressly acknowledged that she "understands and agrees that the financial support being provided by the Cooke Foundation does not constitute employment." FAC, Ex. 10, Part IV, ¶10. And Bobb surely was not her employer. *See, e.g.*, FAC ¶ 66 ("Plaintiff . . . applied for a[n] . . . internship *with SEGL* (emphasis added)); *id.* ¶¶ 70–72 (stating things like "Plaintiff's compensation *from SEGL*," "Plaintiff did not agree to *intern at SEGL* to simply be an RA," and "*SEGL* also *hired* . . ." (emphasis added)). Thus, neither could have wrongfully terminated her. *See Chugach Alaska Corp.*, 210 F. Supp. 3d at 31 (A

"discharged at-will employee may sue his or her former *employer* for wrongful discharge." (emphasis added) (internal quotation marks omitted)).

As for the School, De Soriano argues that she was terminated because of her effort to comply with DC's mandatory reporting statute, D.C. Code § 4-1321.02, which requires school officials and teachers to report sexual abuse of children. *See* Pl.'s Opp. at 37; D.C. Code § 4-1321.02. But a discharged employee can only state a claim for wrongful termination if "the *sole reason* for the discharge is the employee's refusal to violate the law." *George W. Cochran & Co.*, 597 A.2d at 34 (emphasis added). And here, De Soriano has alleged that the School fired her for a variety of reasons. *See* FAC ¶ 285 ("Defendants Bopp and SEGL terminated Plaintiff because of her need for a reasonable accommodation."); *id.* ¶ 258 ("Defendant terminated Plaintiff's employment in substantial part because of her status as a victim of sexual assault and to dissuade Plaintiff from reporting a sexual assault.").

Furthermore, De Soriano has not identified a valid public policy to serve as the basis for her termination. She alleges that she was obligated to report a student's sexual assault pursuant to D.C. Code § 4-1321.02(12). Pl.'s Opp. at 37. That provision, however, deems "*school official[s]*" mandatory reporters of child abuse. *See* § 4-1321.02(12) (emphasis added). De Soriano has not plausibly alleged that she—a temporary, unpaid, and rigorously supervised intern[12]—was a "school official" or that the term "school official" can be interpreted to include a summer intern. The Amended Complaint therefore does not plausibly allege that the School directed her to violate the law nor terminated her solely because she adhered to a law she was required to follow.

[12] *See* FAC, Ex. 9.

## IV. Conclusion

For the foregoing reasons, the Foundation's Motion to Dismiss is GRANTED and the School's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. A separate Order will accompany this Memorandum Opinion.

DATE: September 2, 2026

CARL J. NICHOLS
United States District Judge